864 N.E.2d 1137 (2007)
Virginia MEISTER, Appellant-Defendant,
v.
STATE of Indiana, and the City of Union City, Indiana, Appellees-Plaintiffs.
No. 68A04-0604-CV-196.
Court of Appeals of Indiana.
April 27, 2007.
*1139 Dale W. Arnett, Winchester, IN, Attorney for Appellant.
Steve Carter Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

OPINION
FRIEDLANDER, Judge.
Virginia Meister appeals the trial court's judgment forfeiting her truck, which was seized after her son, John Wymer, drove her truck, was arrested for driving while suspended, and had methamphetamine in the truck. Meister presents the following restated issues for review:
1. Did the trial court abuse its discretion by admitting police officers' testimony regarding the methamphetamine found during the search of the truck and the results of a field test identifying a powder substance as methamphetamine?
2. Did the State present sufficient evidence to support the trial court's forfeiture order?
We affirm.
During the evening of October 22, 2003, Union City Police Officer William Bradbury was on patrol when he observed Wymer driving a 1996 Chevrolet truck on Columbia Street in Union City. The truck was titled in the name of Wymer's mother, Meister. Officer Bradbury, who had information that Wymer's driver's license had been suspended as a result of a prior conviction, followed Wymer, activated his in-car video camera, and contacted the dispatcher to run a license check. Wymer pulled into a convenience store parking lot and went into the store, and Officer Bradbury pulled into an adjacent parking lot and parked so that he was facing Wymer's *1140 truck.[1] When Wymer came out of the convenience store, he walked over to Officer Bradbury's vehicle and asked if the officer knew something or had a reason to be there. Officer Bradbury, who was waiting for dispatch to contact him, told Wymer, "no." Transcript at 6. Wymer returned to his truck and sat in it for a few minutes. The dispatcher contacted Officer Bradbury and told him that Wymer's license was suspended as a result of a prior conviction, and Officer Bradbury moved his vehicle near Wymer's truck and walked up to Wymer's driver's side door. Wymer got out of the truck, and Officer Bradbury told him that his license was suspended, arrested Wymer, and placed him in handcuffs. Officer Bradbury searched Wymer's person, and inside Wymer's pocket, Officer Bradbury found a hollowed out ink pen containing a "powdery looking residue." Id. at 7. Officer Bradbury and Union City Ohio Police Officer Dave McHenry searched Wymer's truck, and under the driver's seat, Officer McHenry found a pill bottle, which had the name Doug Curtner on it and contained a "powder residue" that had a "real strong chemical odor." Id. at 8. Upon discovering the pill bottle, Officer Bradbury contacted Captain Dennis Smith to come to the scene to conduct a field test. Captain Smith processed the evidence and conducted "a micro field test" on the substance in the pill bottle, which tested positive for methamphetamine. Id. at 32. Wymer was ultimately arrested for possession of methamphetamine, possession of paraphernalia, and driving while suspended, and Meister's truck was seized.
At the time of Wymer's arrest, he had a reputation in Union City for being involved with illegal drugs and was known as "one of the main suppliers of methamphetamine in Union City." Id. at 36. On February 28, 2003, Wymer was arrested for possession of a controlled substance and possession of cocaine during a traffic stop, and Meister bonded Wymer out of jail. At that time, Wymer was driving the same truck that he was driving when this instant case occurred in October 2003.[2] On August 28, 2003, Wymer was arrested for possession of a controlled substance, and on August 30, 2003, he was arrested for possession of cocaine, possession of marijuana, and carrying a handgun without a license. Each of these three times that Wymer was arrested, he reported that he lived at the same address where Meister resided or in a residence owned by Meister that was located on the same lot where Meister resided. In addition, Wymer had previously been incarcerated in Texas during the 1990s for a drug offense relating to marijuana.
In February 2004, the State of Indiana and the City of Union City (collectively, "the State") filed a complaint for forfeiture against Wymer and Meister for the forfeiture of Meister's truck and alleged, in part, that Meister was "the registered owner of [the truck] and either knew or should have known [that the truck] was being utilized by defendant John W. Wymer *1141 for purposes which would make said vehicle subject to seizure pursuant to I.C. XX-XX-X-X(a)." Appellant's Appendix at 14. In April 2004, Meister filed an answer and counterclaim, alleging that the lawsuit was filed "merely for harassment" and that it was "a frivolous lawsuit." Id. at 20-21. Thereafter, the State filed a motion to dismiss Meister's counterclaim pursuant to Indiana Trial Rule 12(B)(6), and the trial court granted the motion. In December 2004, the trial court, pursuant to a motion by the State, entered default judgment against Wymer.
In June 2005, the trial court held a bench trial on the forfeiture complaint against Meister. During the trial, the State introduced testimony from Officer Bradbury regarding the powder substance found in the pill bottle under Wymer's seat, and Meister objected, arguing that the warrantless search was unconstitutionalunder both the Fourth Amendment of the United States Constitution and article 1, section 11 of the Indiana Constitution and was not incident to Wymer's arrest because it had no nexus to his arrest for the driving while suspended.[3] The State argued that Meister did not have standing under the Fourth Amendment to challenge the search pursuant to Wymer's arrest. The trial court took Meister's objection under advisement and stated that it would rule upon the objection when it issued its judgment.
Meister also objected to Captain Smith's testimony regarding the results of the field test conducted on the powder substance in the pill bottle, which revealed that it was methamphetamine, because it was "only a presumptive field test" and argued that the identification of the drug should be established by a State chemist's report. Transcript at 32. The trial court also took this objection under advisement pending entry of its judgment.
During the trial, Meister testified she was aware that Wymer had been arrested for drug offenses prior to October 2003. Specifically, she testified that she knew he had served time in prison in Texas in the 1990s for a marijuana-related offense and that she knew he was arrested in February 2003 because she bonded him out of jail. She also testified that, at the time of Wymer's two August 2003 arrests, she "might have" known that he was arrested but that she did not remember it at the time of trial. Id. at 48.
On March 14, 2006, the trial court entered judgment in favor of the State and ordered Meister's truck forfeited. In its written order, the trial court overruled Meister's objections regarding the warrantless search[4] and the identification of the powder substance as methamphetamine and found that the State had proven by a preponderance of the evidence that "Meister had reason to know that the vehicle was being used in the commission of the offense" as required by Indiana Code Ann. § 34-24-1-4(a) (West, PREMISE current through 2006 2nd Regular Sess.). Appellant's Appendix at 7. Meister now appeals.
Meister argues that: (1) the trial court abused its discretion by admitting certain testimony into evidence; and (2) the evidence was insufficient to support the trial *1142 court's judgment ordering her to forfeit her truck. We will review each argument in turn.

1.
Meister first argues that the trial court abused its discretion by admitting testimony into evidence. Specifically, Meister contends that the trial court erred by admitting Officer Bradbury's testimony regarding the methamphetamine found during a search of her truck incident to Wymer's arrest and by admitting Captain Smith's testimony regarding the field test results identifying the powder substance as methamphetamine into evidence.
Because the admission and exclusion of evidence falls within the sound discretion of the trial court, we review the admission of evidence only for abuse of discretion. Wilson v. State, 765 N.E.2d 1265 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind.2001).
We will first address Meister's argument that the trial court abused its discretion by admitting Officer Bradbury's testimony regarding the methamphetamine found during the search of the truck. Meister argues that the search of the truck was unconstitutionalunder both the Fourth Amendment of the United States Constitution and article 1, section 11 of the Indiana Constitutionand that any evidence relating to methamphetamine found in the truck should not have been admitted at trial. The State counters that the evidence is admissible and that the search did not violate the Fourth Amendment because it was incident to a lawful arrest. The State makes no argument regarding the reasonableness of the search under the Indiana Constitution. We will address Meister's warrantless search arguments under both constitutions.
Meister does not challenge the legality of Wymer's arrest but argues the search violated her Fourth Amendment rights because the scope of the search of her truck incident to Wymer's arrest exceeded the permissible bounds for a search incident to arrest.[5] The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. Amend. IV. As a general rule, the Fourth Amendment prohibits warrantless searches. Black v. State, 810 N.E.2d 713 (Ind.2004). Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. Id.
*1143 A search incident to a lawful arrest is one such exception to the warrant requirement. Id. Under this exception, an officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control. White v. State, 772 N.E.2d 408 (Ind.2002). "If a defendant is arrested in an automobile, officers are permitted to search the entire passenger compartment of the vehicle, including `closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like.'" Id. (quoting New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). This rule from Belton that a police officer may search the passenger compartment of a vehicle incident to the lawful arrest of an occupant of the vehicle applies to both "occupants" and "recent occupants," i.e., to situations where the officer makes contact with the occupant while the occupant is inside the vehicle or where the officer first makes contact with the person arrested after the latter has stepped out of his vehicle. Thornton v. U.S., 541 U.S. 615, 622, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); see also Black v. State, 810 N.E.2d 713. The Thornton Court explained:
In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. An officer may search a suspect's vehicle under Belton only if the suspect is arrested. A custodial arrest is fluid and the danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty. The stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle. In either case, the officer faces a highly volatile situation. It would make little sense to apply two different rules to what is, at bottom, the same situation.
Thornton v. U.S., 541 U.S. at 621, 124 S.Ct. 2127 (citations omitted and emphasis in original).
Here, Wymer, who had been driving Meister's truck with a suspended driver's license, was sitting in the truck when approached by Officer Bradbury and then exited the truck prior to being arrested for driving while suspended and placed in handcuffs. Police officers searched the passenger compartment of the truck upon Wymer's arrest and discovered a pill bottle that contained methamphetamine. Wymer was the subject of a lawful custodial arrest for driving while suspended, and Meister does not challenge the legality of Wymer's arrest. The search of the truck, therefore, was a search incident to a lawful custodial arrest, and it did not violate the Fourth Amendment. See Black v. State, 810 N.E.2d 713 (holding that the search of the defendant's vehicle incident to his arrest for driving while suspended, where the defendant had already exited the vehicle when arrested by police and was placed in handcuffs prior to the search of the vehicle, did not violate the Fourth Amendment).
Meister, however, contends that the search of her truck incident to Wymer's arrest violated the Fourth Amendment because it was not needed for officer safety and would not have produced any evidence relating to Wymer's arrest for driving while suspended because Wymer had already gotten out of the truck when he was arrested and was in handcuffs when the police searched the truck. In support of her argument, she relies on Justice Scalia's *1144 concurring opinion in Thornton. The State argues, "[i]t is of no consequence where Wymer may have been when the search occurred because the holdings in both Black and Thornton create a brightline rule that a search of a vehicle incident to arrest is proper even [if] a defendant is not in the car when the arrest physically occurs." Appellee's Brief at 8. We agree with the State.
"The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which Belton enunciated." Thornton v. U.S., 541 U.S. at 622-23, 124 S.Ct. 2127. Indeed, as the Belton Court noted:
The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.
New York v. Belton, 453 U.S. at 461, 101 S.Ct. 2860 (quoting United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)). Thus, Meister's argument that the search of her truck incident to Wymer's arrest violated the Fourth Amendment fails.
Meister also contends the search of her truck incident to Wymer's arrest violated her rights under article 1, section 11 of the Indiana Constitution because there were "no officer safety issues nor was there any reason to believe that any evidence relevant to [Wymer's arrest for] driving while suspended would be found." Appellant's Brief at 14. Article 1, section 11 of the Indiana Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated. . . ." Automobiles are among the "effects" protected. Taylor v. State, 842 N.E.2d 327 (Ind.2006). Such a right under article 1, section 11 is a "personal right of the individual whose person, house, papers or effects are searched or seized." Peterson v. State, 674 N.E.2d 528, 533-34 (Ind.1996), cert. denied, 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998).
"While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application." Myers v. State, 839 N.E.2d 1146, 1152, 1153 (Ind.2005). To determine whether a search violated the Indiana Constitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances. Myers v. State, 839 N.E.2d at 1153. This requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search. Id. Our Indiana Supreme Court has explained the reasonableness evaluation as follows:
[A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.
*1145 Litchfield v. State, 824 N.E.2d 356, 361 (Ind.2005). The burden is on the State to show that each relevant intrusion was reasonable in light of the totality of the circumstances. State v. Bulington, 802 N.E.2d 435 (Ind.2004).
Considering and balancing the non-exclusive factors identified in Litchfield, we conclude that the interior search of Meister's truck following the arrest of Wymer was reasonable under the circumstances. First, there was a significant "degree of concern, suspicion, or knowledge that a violation has occurred." See Litchfield v. State, 824 N.E.2d at 361. Aside from the driving while suspended violation for which Wymer was arrested, Officer Bradbury found a hollowed-out pen that contained a "powdery looking residue" prior to searching Meister's truck. Transcript at 7. Thus, there was also a degree of concern or suspicion that there was also a violation relating to possession of paraphernalia. See Ind.Code § 35-48-4-8.3(a) (West 2004)
Second, when examining the degree of intrusion the method of the search imposes on the citizen's ordinary activities, we consider the nature of the privacy interest upon which the search intrudes and the character of the intrusion itself. See Litchfield v. State, 824 N.E.2d 356. Put another way, we consider "the indignity visited upon the citizen." Id. at 360. Here, the degree of intrusion on Meister, at least as to public notice and embarrassment, was extremely minimal because she was not even present when her truck was searched and the search occurred in the evening. See Myers v. State, 839 N.E.2d at 1154 (noting that the intrusion on the defendant, at least as to public notice and embarrassment, was somewhat lessened because of the hour and place of the search, which occurred after midnight and in driveway of defendant's mobile home); see also Masterson v. State, 843 N.E.2d 1001 (Ind.Ct.App.2006) (search occurred after midnight, in front of an apartment building where the defendant was found hiding in the closet, and the vehicle searched was not registered to the defendant), trans. denied.
Third, "the extent of law enforcement needs," Litchfield v. State, 824 N.E.2d at 361, requires consideration of the nature and immediacy of the governmental concern. Some of the factors that may fall into this law-enforcement-needs category include a consideration of the availability of a magistrate to consider issuance of a warrant and the mobility of the vehicle, see Myers v. State, 839 N.E.2d 1146, a means of gathering additional information, see Cochran v. State, 843 N.E.2d 980, 985 (Ind. Ct.App.2006), trans. denied, and the need to protect the public. See Holder v. State, 847 N.E.2d 930 (Ind.2006); Frensemeier v. State, 849 N.E.2d 157 (Ind.Ct.App.2006), trans. denied. Wymer was stopped during the evening hours; thus, prompt access to a magistrate to consider issuance of a warrant may have posed some difficulty. See Myers v. State, 839 N.E.2d 1146. Meister contends that the search was unreasonable because there was no evidence to be found in her truck relating to Wymer's arrest for driving while suspended. We agree that it is unlikely the search of her truck was needed to find and preserve evidence relating to Wymer's crime of driving while suspended, see State v. Moore, 796 N.E.2d 764 (Ind.Ct.App.2003), trans. denied;[6] *1146 however, as noted above, there was still a possible concern with preserving any potential evidence relating to the discovery of the pen containing the powdery residue and the crime of possession of paraphernalia. While this factor may not weigh as heavily as the remaining two Litchfield factors, there was still some weight attributable to the law enforcement needs. Based on a consideration of the three Litchfield factors, we conclude the interior search of Meister's truck following the arrest of Wymer was reasonable under the circumstances and that Meister's challenge under article 1, section 11 of the Indiana Constitution fails.
In summary, because the search of Meister's truck incident to Wymer's arrest did not violate the Fourth Amendment and was reasonable under article 1, section 11, the trial court did not abuse its discretion by admitting Officer Bradbury's testimony regarding the methamphetamine found in Meister's truck incident to Wymer's arrest.
Next, we address Meister's argument that the trial court abused its discretion by admitting Captain Smith's testimony regarding the results of a field test identifying the powder substance found in Meister's truck as methamphetamine. During the bench trial, Meister objected to Captain Smith's testimony regarding the field test results and argued it was "only a presumptive field test" and should not be used to prove the identity of the substance. Transcript at 32. The trial court overruled Meister's objection, finding there was a sufficient foundation laid for the admission of Captain Smith's testimony based upon Burkett v. State, 691 N.E.2d 1241 (Ind.Ct.App.1998), trans. denied.
In Burkett v. State, we upheld the trial court's admission of a police officer's testimony regarding the results of a field test on a green leafy substance that showed it was marijuana because the State had provided a sufficient foundation for the officer's qualifications and the reliability of the field test as required by Indiana Evidence Rule 702.[7]Burkett v. State, 691 N.E.2d 1241. Specifically, we noted that the officer's testimony regarding the field test results was properly admitted because he had provided testimony that: (1) he had been trained to administer the field test; (2) he followed the proper procedures for the test; (3) explained how the field test worked, including a description of the three ampules of acid that change color to show the presence of marijuana; and (4) the field test was used routinely by the Sheriff's Department. Id.
Here, Captain Smith testified he had completed a drug recognition course and had training from the Indiana Drug Enforcement Agency regarding methamphetamine. He also testified that field testing *1147 for illegal substances requires the use of specific testing equipment and that based on his visual inspection and chemical odor of the powder substance in the pill bottle, he conducted a "micro field test." Transcript at 32. Captain Smith testified he had been trained by his superior with the Union City Police Department on how to use the field test and explained how the field test worked. Specifically, he testified that this field test was somewhat similar to a pregnancy test and required a small amount of the drug residue to be placed into a sealed container and snapped into a pad, where water was then introduced. He explained that when the water came into contact with the substance and the pad, it would "turn the window to a pink color" if the result was "positive" and would not change color if the result was "negative." Id. Captain Smith further testified that he had used this field test on several prior occasions and that it had subsequently proven to be accurate. Captain Smith then testified that the field results conducted on the substance in the pill bottle tested positive for methamphetamine.
Based on the above, we cannot say that the trial court abused its discretion by admitting Captain Smith's testimony regarding the methamphetamine field test results, especially here, in a forfeiture proceeding, where the State was only required to prove by a preponderance of the evidence that Wymer was transporting an illegal substance in the vehicle. See Burkett v. State, 691 N.E.2d 1241; see also Jennings v. State, 553 N.E.2d 191 (Ind.Ct. App.1990) (finding no abuse of discretion in admitting an officer's testimony regarding the identification of marijuana in a forfeiture proceeding where the officer had received training to identify marijuana).

2.
Finally, Meister argues the evidence was insufficient to support the trial court's forfeiture order. Forfeiture cases are civil in nature, and in reviewing the sufficiency of the evidence in a civil case, we consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn therefrom. Lipscomb v. State, 857 N.E.2d 424 (Ind.Ct. App.2006). We neither reweigh the evidence nor assess the credibility of the witnesses. Id. When there is substantial evidence of probative value to support the trial court's ruling, it will not be disturbed. Id. We will reverse only when we are left with a definite and firm conviction that a mistake has been made. Id.
At the time Meister's truck was seized, the relevant portion of the forfeiture statute, Ind.Code § 34-24-1-1(a) (West 2003), provided that the following may be seized:
(1) All vehicles . . ., if they are used or are intended for use by the person or persons in possession of them to transport or in any manner to facilitate the transportation of the following:
(A) A controlled substance for the purpose of committing, attempting to commit, or conspiring to commit any of the following:
* * * * * *
(vi) Possession of cocaine, a narcotic drug, or methamphetamine (IC XX-XX-X-X).
For a trial court to properly order property forfeited, the State "must show by a preponderance of the evidence that the property was within the definition of property subject to seizure under section one of this chapter." I.C. § 34-24-1-4(a). When the property seized is a vehicle, the State "must also show by a preponderance of the evidence that a person who has an ownership interest of record in the bureau of *1148 motor vehicles [at the time the vehicle is seized] knew or had reason to know that the vehicle was being used in the commission of the offense." Id. (emphasis added); see One 1968 Buick, 4 Door v. State, 638 N.E.2d 1313, 1318 (Ind.Ct.App.1994) (holding that the relevant time period for the ownership interest is "at the time that a vehicle is seized").
Meister contends the State failed to prove that Meister "knew or had reason to know that the vehicle was being used in the commission of the offense" as required by I.C. § 34-24-1-4(a). The State argues the trial court properly ordered the forfeiture of Meister's truck because the evidence presented showed by a preponderance of the evidence that Meister had reason to know that Wymer was using her truck to transport a controlled substance. We agree with the State.
Here, the State presented evidencevia testimony from Officer Bradbury and Captain Smiththat at the time of Wymer's arrest, he had a reputation in the community for being involved with illegal drugs. Captain Smith specifically testified that Wymer was known as "one of the main suppliers of methamphetamine in Union City." Transcript at 36. The State also presented evidence that Wymer was arrested for possession of a controlled substance and possession of cocaine in February 2003, for possession of a controlled substance in August 2003, and for possession of cocaine, possession of marijuana, and carrying a handgun without a license on another occasion in August 2003. Each of these three times Wymer was arrested, he reported that he lived at the same address in Union City where Meister resided or in a residence owned by Meister that was located on the same lot where Meister resided. Meister testified that Wymer was driving her truck with her permission in October 2003, and she admitted that she knew about Wymer's February 2003 arrest because she had bonded him out of jail and that she knew that he had previously been incarcerated in Texas during the 1990s for a marijuana-related offense. In addition Meister testified that, at the time of Wymer's two August 2003 arrests, she "might have" known that he was arrested but that she did not remember it at the time of trial. Id. at 48.
The trial court found Meister was "not a credible witness in certain areas of her testimony, including . . . her knowledge of Wymer's reputation . . . and Wymer's arrests prior to October 23, 2003" and concluded that the State had proved by a preponderance of the evidence Meister had reason to know that her vehicle was being used in the commission of the offense. Based on the evidence presented, we conclude that the trial court's forfeiture order is supported by sufficient evidence.
Judgment affirmed.
KIRSCH, J., and RILEY, J., concur.
NOTES
[1] Officer Bradbury testified that his video camera was still running when he parked in the adjacent lot and that he adjusted his camera so that it would show Wymer's driver's side door. We note that this video was introduced as an exhibit at the bench trial and that Meister cites to the exhibit in her brief. This exhibit and the other exhibits introduced at trial, however, have not been transmitted to us as part of the record on appeal. We remind Meister that, as the appellant, she bears the burden of presenting a record that is complete with respect to the issues raised on appeal. Ford v. State, 704 N.E.2d 457 (Ind. 1998).
[2] In February 2003, the truck was owned by Steve Johnson. Meister purchased the truck from Johnson in August 2003.
[3] Meister also objected at trial to the search of the pill container because it was a closed container; however she does not raise any such argument on appeal.
[4] When ruling on the warrantless search in its judgment order, the trial court only addressed the Fourth Amendment and did not specifically rule on whether the search was reasonable under the Indiana Constitution. Additionally, the trial court did not rule on the State's argument that Meister lacked standing to assert a Fourth Amendment challenge.
[5] During the bench trial, the State argued Meister did not have standing to assert a Fourth Amendment challenge to the search of the truck pursuant to Wymer's arrest. The trial court took it under advisement but did not address the issue of standing in its judgment order. Upon appeal, the State makes no claim in regard to whether Meister may assert the protection of the Fourth Amendment regarding the search of the truck pursuant to Wymer's arrest. Therefore, we do not address the issue of Meister's ability to raise the Fourth Amendment challenge but examine the propriety of the search of the truck as if Meister would have established that she personally had an expectation of privacy in the place searched and that her expectation was reasonable. See Everroad v. State, 590 N.E.2d 567, 569 (Ind.1992) ("in resolving a claim of unlawful search and seizure, an appellate court should not invoke lack of standing, sua sponte"); Dawson v. State, 786 N.E.2d 742 (Ind.Ct.App.2003) (refusing to address the issue of standingdespite the fact the State had raised it at the trial level because the State had not raised the issue on appeal), trans. denied.
[6] In State v. Moore, 796 N.E.2d 764, we held that the search of a vehicle driven by the defendant incident to the defendant's arrest for driving while suspended was not reasonable under the Indiana Constitution because there was no evidence of a concern for officer safety and no evidence concerning a need to search the vehicle to find and preserve evidence connected to the crime of driving while suspended. While the instant case is similar to State v. Moore because the defendant in that case and Wymer in this case were arrested for driving while suspended, the instant case is distinguishable because, here, Officer Bradbury discovered a hollowed-out pen containing a powdery residue during a search of Wymer's person, which presented evidence of an additional crimepossession of paraphernaliaand the possible concern with preserving any potential evidence relating to that crime. In addition, we did not analyze the reasonableness of the search in State v. Moore under the three factors enunciated in Litchfield.
[7] Indiana Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.