**Virginia MEISTER, Appellant–
Defendant,**

v.

**STATE of Indiana and the City
of Union City, Indiana,
Appellee–Plaintiff.**

**No. 68A04–0604–CV–196.**

Court of Appeals of Indiana.

Aug. 31, 2009.

Dale W. Arnett, Winchester, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

This case comes before us on remand from the United States Supreme Court. In *Meister v. State*, 864 N.E.2d 1137 (Ind. Ct.App.2007) this court affirmed the forfeiture of Virginia Meister's vehicle, which was seized after her son, John Wymer, was arrested while driving the vehicle for the offense of driving while suspended. A search subsequent to that arrest revealed that Wymer had methamphetamine in the vehicle. After the Indiana Supreme Court denied Meister's petition for transfer, she filed a petition for writ of certiorari with the United States Supreme Court. The Court granted that writ on May 4, 2009 and on June 5 remanded the cause to this court with the following instructions: "It is ordered and adjudged on May 4, 2009, by this Court that the judgment of the above court in this cause is vacated with costs, and the cause is remanded to the Court of Appeals of Indiana, First District, for further consideration in light of *Arizona v. Gant*, 556 U.S. —— [, 129 S.Ct. 1710, 173 L.Ed.2d 485] (2009)." Pursuant to this directive, we reconsider Meister's appeal.

The underlying facts were set out in this court's original opinion as follows:

During the evening of October 22, 2003, Union City Police Officer William Bradbury was on patrol when he observed Wymer driving a 1996 Chevrolet truck on Columbia Street in Union City. The truck was titled in the name of Wymer's mother, Meister. Officer Bradbury, who had information that Wymer's driver's license had been suspended as a result of a prior conviction, followed Wymer, activated his in-car video camera, and contacted the dispatcher

to run a license check. Wymer pulled into a convenience store parking lot and went into the store, and Officer Bradbury pulled into an adjacent parking lot and parked so that he was facing Wymer's truck. When Wymer came out of the convenience store, he walked over to Officer Bradbury's vehicle and asked if the officer knew something or had a reason to be there. Officer Bradbury, who was waiting for dispatch to contact him, told Wymer, "no." Wymer returned to his truck and sat in it for a few minutes. The dispatcher contacted Officer Bradbury and told him that Wymer's license was suspended as a result of a prior conviction, and Officer Bradbury moved his vehicle near Wymer's truck and walked up to Wymer's driver's side door. Wymer got out of the truck, and Officer Bradbury told him that his license was suspended, arrested Wymer, and placed him in handcuffs. Officer Bradbury searched Wymer's person, and inside Wymer's pocket, Officer Bradbury found a hollowed out ink pen containing a "powdery looking residue." Officer Bradbury and Union City Ohio Police Officer Dave McHenry searched Wymer's truck, and under the driver's seat, Officer McHenry found a pill bottle, which had the name Doug Curtner on it and contained a "powder residue" that had a "real strong chemical odor." Upon discovering the pill bottle, Officer Bradbury contacted Captain Dennis Smith to come to the scene to conduct a field test. Captain Smith processed the evidence and conducted "a micro field test" on the substance in the pill bottle, which tested positive for methamphetamine. Wymer was ultimately arrested for possession of methamphetamine, possession of paraphernalia, and driving while suspended, and Meister's truck was seized.

*Id.* at 1139–40 (internal footnote and citations to record omitted).

Meister presents two issues for review, the first of which challenges the admissibility of evidence, premised upon Meister's argument that the search of her vehicle was illegal. The second challenges the sufficiency of the evidence supporting the forfeiture order, specifically upon grounds that she did not know or have reason to know that her vehicle was being used in the commission of an offense, as required by Ind.Code Ann. § 34–24–1–4(a) (West, Premise through 2009 Public Laws approved and effective though 4/20/2009).

We affirm.

1.

■ Meister contends the trial court abused its discretion by admitting police officers' testimony regarding the methamphetamine found during the search of the truck and the results of a field test identifying the powder substance as methamphetamine. She contends the search was illegal under the Fourth Amendment and article 1, section 11 of the Indiana Constitution.

Our standard of review for the admissibility of evidence is well settled. The admission or exclusion of evidence lies within the trial court's sound discretion and is afforded great deference on appeal. *Whiteside v. State,* 853 N.E.2d 1021 (Ind. Ct.App.2006). We will reverse the trial court's ruling on the admissibility of evidence only for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

In our original opinion, we rejected Meister's challenge to the legality of the warrantless search of her vehicle under the Fourth Amendment. It is a case cited in that discussion, i.e., *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that was at the heart of the United States Supreme Court's grant of Meister's petition for writ of certiorari. We held that the search of Meister's vehicle fit within the exception recognized for searches incident to a legal arrest. Following is our discussion of that subject, including our analysis of *Belton* as it applied to the facts of this case:

> A search incident to a lawful arrest is one such exception to the warrant requirement. Under this exception, an officer may conduct a warrantless search of the arrestees person and the area within his or her immediate control. *White v. State*, 772 N.E.2d 408 (Ind. 2002). "If a defendant is arrested in an automobile, officers are permitted to search the entire passenger compartment of the vehicle, including 'closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like.'" *Id.* (quoting *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). This rule from *Belton* that a police officer may search the passenger compartment of a vehicle incident to the lawful arrest of an occupant of the vehicle applies to both "occupants" and "recent occupants," i.e., to situations where the officer makes contact with the occupant while the occupant is inside the vehicle or where the officer first makes contact with the person arrested after the latter has stepped out of his vehicle. *Thornton v. U.S.*, 541 U.S. 615, 622, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); *see also Black v.*

*State*, 810 N.E.2d 713. The *Thornton* Court explained:

> In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle. An officer may search a suspect's vehicle under *Belton* only if the suspect is arrested. A custodial arrest is fluid and the danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty. The stress is no less merely because the arrestee exited his car before the officer initiated contact, nor is an arrestee less likely to attempt to lunge for a weapon or to destroy evidence if he is outside of, but still in control of, the vehicle. In either case, the officer faces a highly volatile situation. It would make little sense to apply two different rules to what is, at bottom, the same situation. [*Thornton v. U.S.*, 541 U.S. at 621, 124 S.Ct. 2127 (citations omitted and emphasis in original) ].

*Meister v. State*, 864 N.E.2d at 1143 (some internal citations to authority omitted). To summarize, we held that the search of Meister's vehicle was legal because Wymer, the driver, had been placed under arrest and, pursuant to *Belton*, officers were permitted to search the entire passenger compartment of the vehicle when the subject was arrested while driving the vehicle. The United States Supreme directs us to reconsider this analysis in light of *Arizona v. Gant*, 556 U.S. ——, 129 S.Ct. 1710.

Clearly, in *Gant*, the Court's primary aim was to revisit *Belton*. In so doing, the Court first considered the context in which *Belton* arose. Approximately twelve years before *Belton* was decided, in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23

L.Ed.2d 685 (1969), the Court determined that police may search incident to an arrest only the space within the arrestee's immediate control, meaning "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. 2034. This exception to the warrant requirement ensured that the scope of such a search effectuates the dual purposes of protecting arresting officers and safeguarding evidence of the offense of arrest that the arrestee might conceal or destroy. *Arizona v. Gant*, 556 U.S. ——, 129 S.Ct. 1710. In *Belton*, the Court considered *Chimel's* application in the vehicle context and concluded that when a police officer lawfully arrests a vehicle's occupant, "he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" as well as any containers therein. *New York v. Belton*, 453 U.S. at 460, 101 S.Ct. 2860 (footnote omitted). Over the years, that rule was interpreted broadly and eventually viewed by many courts as authorizing a vehicle search incident to every recent occupant's arrest. In *Gant*, the Court concluded that this expansive interpretation "untether[ed] the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.'" *Arizona v. Gant*, 129 S.Ct. at 1719 (quoting *New York v. Belton*, 453 U.S. at 460, n. 3, 101 S.Ct. 2860). The *Gant* Court indicated that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* As a result, the Court determined, the expansive reading given to *Belton* by courts over the years was too broad. The Court clarified that, henceforth, *Belton* should be understood only to permit "an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.*

In our original opinion, our conclusion that the search of Meister's vehicle was authorized under the Fourth Amendment was based upon the expansive reading of *Belton* of which the *Gant* Court explicitly disapproved. Thus, it is not sustainable on that rationale. We note in this regard that Wymer was handcuffed and not within reaching distance of Meister's vehicle when the search was conducted. Moreover, Wymer was arrested for driving without a license. In language particularly applicable to the instant case, the *Gant* Court observed, "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.* As a result, the search was not justifiable under either permissible *Belton* rationale, as clarified by *Gant*. This is not to say, however, that the search cannot be sustained on a different theory.

In explaining that a broad reading of *Belton* is not necessary to protect law enforcement safety and evidentiary issues, the *Gant* Court noted that its ruling did not disturb other established exceptions to the warrant requirement that "authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." *Id.* at 1721. The Court specifically identified and explained the following such exception:

> If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence

might be found.... *Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader.

*Id.* We conclude that this exception applies here.

■ As an appellate court, we will sustain the trial court if it can be done on any legal ground apparent in the record. *Ratliff v. State*, 770 N.E.2d 807 (Ind.2002). The automobile exception is a well-recognized exception to the Fourth Amendment's warrant requirement. *See Myers v. State*, 839 N.E.2d 1146 (Ind.2005). A search falls within this exception when a vehicle is readily mobile and probable cause exists to believe it contains contraband or evidence of a crime. *See id.* (*citing Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (where there is probable cause to search a vehicle, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, notwithstanding that a warrant has not been actually obtained)).

■ Examining first the probable cause requirement, we have observed that the " '[f]acts necessary to demonstrate the existence of probable cause for a warrantless search are not materially different from those which would authorize the issuance of a warrant if presented to a magistrate.' " *Masterson v. State*, 843 N.E.2d 1001, 1004 (Ind.Ct.App.2006) (quoting *Gibson v. State*, 733 N.E.2d 945, 952 (Ind.Ct. App.2000)), *trans. denied.* " 'Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to conclude that a search of those premises will uncover evidence of a crime.' " *Id.* at 1004–05 (quoting *Gibson v. State*, 733 N.E.2d at 952).

At the June 10, 2005 forfeiture hearing, Officer Bradbury testified that while on patrol on October 22, 2003, he observed Wymer driving a vehicle. Officer Bradbury had just days before advised Wymer that his license was suspended. After verifying that Wymer's license was still suspended, Officer Bradbury initiated a traffic stop. Officer Bradbury testified that he had arrested Wymer on two prior occasions and both times found drugs either on his person or in his vehicle. On one such occasion, Officer Bradbury found in one of Wymer's pockets a small vial with a "white powder substance" in it, *Transcript* at 17, which turned out to be an illegal substance. On the night of the instant incident, Officer Bradbury patted Wymer down at or about the time of arrest and discovered something he considered "out of the ordinary." *Id.* at 7. He found in Wymer's pocket the body of an ink pen without any of its internal parts, with a "powdery looking residue inside of it." *Id.* Based upon the presence of the suspicious pen in Wymer's pocket and Officer Bradbury's knowledge of Wymer's comparatively recent history of illegal drug possession, the officer could have reasonably concluded that Wymer was again in possession of illegal drugs. Thus, based on the facts known to Officer Wymer at the time of the search, he had probable cause to believe a search of the vehicle Wymer was driving would uncover contraband or evidence of that crime.

The second element that must be present to justify a warrantless search of a vehicle is that the vehicle is readily mobile. Our Supreme Court has clarified the meaning of that phrase in this context as follows:

In light of the Supreme Court's recent emphatic statement in [*Maryland v. Dyson*, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)] that the automobile exception "does not have a separate exigency requirement," we con-

clude that this exception to the warrant requirement under the Fourth Amendment does not require any additional consideration of the likelihood, under the circumstances, of a vehicle being driven away. Rather, we understand the "ready mobility" requirement of the automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present. This broad understanding of "readily mobile" is also consistent with the recognition that, for Fourth Amendment purposes, an individual is deemed to have a reduced expectation of privacy in an automobile. *Myers v. State*, 839 N.E.2d at 1152. The vehicle that Wymer was driving at the time, i.e., Meister's vehicle, was clearly operational, as Officer Bradbury had observed Wymer operating the vehicle immediately prior to the stop. Because the vehicle was operational, it was readily mobile. *See Myers v. State*, 839 N.E.2d 1146.

In view of the fact that Officer Bradbury had probable cause to search Meister's readily mobile vehicle, the warrantless search of the vehicle was justified under the automobile exception.[1] Therefore, there was no violation of the Fourth Amendment.

Finally on this issue, we note that our analysis in the original opinion of Meister's challenge under article 1, section 11 of the Indiana Constitution is unaffected by *Gant.* Therefore, for the reasons stated in our original opinion, our conclusion that the search of Meister's vehicle did not violate this provision of the Indiana Constitution remains unchanged.

2.

The second issue presented by Meister challenges the sufficiency of the evidence supporting the trial court's forfeiture order. Specifically, she alleges the State failed to prove that she knew or had reason to know that the vehicle was being used in the commission of the offense, as required by I.C. § 34–24–1–4(a). In our original opinion, we reviewed the evidence presented on this point and rejected Meister's argument, based in large part upon our conclusion that there was substantial evidence of probative value, *see Lipscomb v. State*, 857 N.E.2d 424 (Ind.Ct.App.2006), supporting the trial court's finding that Meister was "not a credible witness in certain areas of her testimony, including

---

1. We note that the search is also sustainable under the good faith exception set out in Ind.Code Ann. § 35–37–4–5 (West, Premise through 2009 Public Laws approved and effective though 4/20/2009), which provides that a "court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith", with "good faith" defined as present in this context when the evidence is obtained pursuant to "judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated[.]" *Id.* at I.C. § 35–47–4–5(b)(1)(B). *See also Edwards v. State*, 832 N.E.2d 1072 (Ind.Ct.App.2005). In *Gant*, a majority of the

Justices agreed that *Gant* did not merely narrow or clarify this aspect of search and seizure law as it previously existed under *Belton;* instead, it changed the law. *See Arizona v. Gant*, 129 S.Ct. at 1726 ("I am therefore confronted with the choice of either leaving the current understanding of *Belton* and *Thornton* in effect, or acceding to what seems to me the artificial narrowing of those cases adopted by Justice STEVENS") (Justice Scalia, concurring).

At the time of Wymer's arrest, the officers' search of Meister's vehicle was within acceptable Fourth Amendment parameters as set out in *Belton*, as that case was then generally interpreted by federal and state courts. As such, the good faith exception applies.

... her knowledge of Wymer's reputation ... and Wymer's arrests prior to October 23, 2003". *Appellant's Appendix* at 8. That knowledge was the lynchpin of the State's case. We discern no need to do more here than indicate that our views and analysis on this issue, as set out in our original opinion, remain unchanged. We note in this regard that *Gant* did not address the subjects of forfeiture or the sufficiency of evidence, and therefore nothing in *Gant* requires reconsideration of this issue.

Judgment affirmed.

KIRSCH, J., concurring.

RILEY, J., dissenting with separate opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent from the majority's decision to affirm the trial court's forfeiture of Meister's vehicle. This case comes to us on remand from the United States Supreme Court, instructing us to consider the cause "in light of *Arizona v. Gant,* 556 U.S. —— [, 129 S.Ct. 1710, 173 L.Ed.2d 485] (2009)." In *Gant,* our Supreme Court reigned in the expansive interpretation of *Belton* and its progeny and brought the nature of a vehicle search back to its original limited rationale, as first pronounced in *Chimel.* As the majority noted, the Supreme Court concluded that *Belton's,* broad interpretation "untether[ed] the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searched incident to lawful custodial arrests.'" *Gant,* 129 S.Ct. at 1719. As a result, the Court held in *Gant* that

we reject this [expansive] reading of *Belton* and hold that the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. Although it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."

*Id.*

Neither the possibility of access nor the likelihood of discovering offense-related evidence authorized the search in this case. Here, Officer Bradbury testified that after he observed Wymer drive his mother's vehicle, he ran a driver's license check as he believed Wymer's license to be expired. While waiting for the result on the license check, the Officer noticed Wymer pull into the parking lot of a local store. After Wymer had returned from the store and while he was sitting in his car, Officer Bradbury was notified that Wymer's license was expired. Officer Bradbury then walked over to Wymer and Wymer exited his vehicle. Officer Bradbury advised Wymer that he was under arrest for driving while suspended and placed him in handcuffs. Searching Wymer's person, Officer Bradbury located an ink pen without inner parts but with "powdery looking residue inside it." (Transcript p. 7). At that point, the Officer did not field test the residue nor did he place Wymer under arrest for possession of illegal substances.

After searching Wymer, Officer Bradbury conducted "a search [of the vehicle] incident to arrest." (Tr. p. 8). During this search, officers found a pill bottle with a powder residue inside it. Thereafter,

Captain Smith was contacted to conduct a field test on the residue of both items.

Based on the facts before us, it is clear that Wymer was handcuffed and secured prior to the search of his car. He was not within reaching distance of the car's interior. An evidentiary basis for the search was also lacking. Wymer was arrested for driving with a suspended license—an offense for which the officers could not expect to find evidence in the vehicle.[2] Because the officers could not reasonably have believed either that Wymer could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case, pursuant to *Gant's* directives, was unreasonable.

---

2. I note that if the officers had charged Wymer with possession of illegal substances after finding the ink pen and prior to the search, the search could be upheld based on the evidentiary prong of *Gant.*