ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Steve Carter
Attorney General of Indiana

Joby Jerrells
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 20S03-0411-CR-00494

JAMES THOMAS MYERS, *Appellant (Defendant below),*

v.

STATE OF INDIANA, *Appellee (Plaintiff below).*

Appeal from the Elkhart Circuit Court, No. 20C01-0203-FA-00033
The Honorable Terry C. Shewmaker, Judge

On Petition For Transfer from the Indiana Court of Appeals, No. 20A03-0310-CR-00398

**December 21, 2005**

**Dickson, Justice.**

The defendant, James Thomas Myers, challenges the admission of evidence resulting from a warrantless search of his car based on a police canine sniff sweep of the car following a routine traffic stop. He was convicted of possession of methamphetamine in excess of three grams with intent to deliver, a Class A felony. The Court of Appeals affirmed. Myers v. State, 812 N.E.2d 146 (Ind. Ct. App. 2004). We granted transfer and now affirm the trial court.

Separately claiming violation of both the federal and state constitutional prohibitions

against unreasonable search and seizure, the defendant's appeal contends (a) that the warrantless canine sniff test of his vehicle was impermissible because it was not done until after the stop had been completed; (b) that, even if the canine sweep occurred before the traffic stop concluded, there was no probable cause to authorize either the exterior vehicle canine sniff or the resulting interior search; and (c) that because his vehicle was not mobile, the warrantless search of the interior of the defendant's vehicle was not justified by the automobile exception to the warrant requirement.

This case arises from the following events. About 1:00 a.m. on March 14, 2002, in Goshen, Indiana, police officer Shawn Turner noticed the defendant's vehicle because as it was driving towards him, it was passing two other vehicles that were also driving towards him, and its engine was "roaring" above the engines of the other two vehicles. Appellant's App'x 127. Officer Turner then observed the vehicle turn onto a street without signaling. Because of the failure to signal and the "speed contest," *id.* at 128, 149, Officer Turner activated his emergency lights and followed the defendant who proceeded into the driveway of his residential mobile home, stopped, and began to exit his car. The officer pulled into the driveway, stopping the police vehicle about fifteen to twenty feet behind the defendant's car. Officer Turner then ordered the defendant back to his car and requested his driver's license and registration. Officer Turner walked up to the defendant's car and observed a mist and a strong scent of cologne in the passenger compartment. As the defendant handed Officer Turner his driver's license and registration, the defendant's hands were shaky, and he appeared very nervous, talking very fast and excitedly, and exhibiting constricted pupils. Upon identifying the defendant, Officer Turner became more suspicious because the Goshen Drug Unit had previously informed members of the police department that the defendant was suspected of drug activity. Officer Turner was aware that cologne was often used to mask lingering odor of contraband and that people influenced by certain types of drugs have constricted pupils even in the darkness. *Id.* at 130-31, 155. Officer Turner returned to his patrol car, radioed for license and registration verification, requested a canine unit to assist with the stop, and began filling out a traffic violation warning ticket. *Id.* at 132-33. At 1:32 a.m., about thirteen minutes after the traffic stop began, Deputy Mike McHenry, a canine officer, arrived with his narcotics detection dog. The parties dispute whether the canine sniff search of the vehicle's exterior occurred before the traffic stop concluded. Officer Turner testi-

fied that he called the defendant out of the car and was discussing the violation and warning ticket with him and "where we were going to go from there" while Deputy McHenry's canine was conducting an exterior sniff of the vehicle, which Deputy McHenry reported took about a minute to a minute and a half. *Id.* at 133, 159. When the dog reacted to the exterior passenger side of the vehicle, the officers opened the door and had the dog sniff the interior of the vehicle, again reacting and leading the officers to the trunk. The officers then performed their own warrantless search of the inside of the car, discovering cologne in the console; methamphetamine in the glove compartment; and marijuana, methamphetamine, a ledger, and scales in the trunk. *Id.* at 134-35. Officer Turner testified that he placed the defendant in handcuffs "when we first started discovering evidence within the vehicle." *Id.* at 145.

The defendant's motion to suppress the items found in the vehicle was overruled, and he objected to their admission at trial.

## I. Fourth Amendment Claim

*A. Propriety of Vehicle Dog Sniff Following Traffic Stop*

The defendant does not dispute the propriety of the traffic stop but argues that the traffic stop was completed before any reasonable suspicion arose, and that the police therefore lacked any valid basis to conduct the dog sniff of his vehicle.

The use of narcotics sniffing dogs by police has recently been addressed by the United States Supreme Court. Deciding "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detention dog to sniff a vehicle during a legitimate traffic stop," the Court declared that the use of a narcotics-detection dog "generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 837, 838, 160 L.Ed.2d 842, 846, 847 (2005). It reasoned that "[o]fficial conduct that does not compromise any legitimate interest in privacy is not a search subject to the fourth Amendment," that "government conduct that *only* reveals the possession of contraband compromises no legitimate privacy interests," and that "the expectation that certain facts will not come to the attention of the authorities

3

is not the same as an interest in privacy that society is prepared to consider reasonable." <u>Caballes</u>, 125 S.Ct. at 837-38, 160 L.Ed.2d at 847 (included quotations omitted). The Court held that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner . . . ." <u>Caballes</u>, 125 S.Ct. at 837-38, 160 L.Ed.2d at 848. The Court did note, however, that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it if prolonged beyond the time reasonably required to complete that mission." <u>Caballes</u>, 125 S.Ct. at 837, 160 L.Ed.2d at 846.

The defendant does not contend that the canine sniff prolonged his own detention by the police. Rather, his claim is that, once the stop was complete, his Fourth Amendment rights were violated by the police thereafter conducting the canine sweep of his vehicle. This claim fails for two independent reasons. First, as explained in <u>Caballes</u>, a canine sweep of the exterior of a vehicle does not intrude upon a Fourth Amendment privacy interest. Second, the trial court properly determined that the canine sweep was conducted before the traffic stop was completed.

Noting that "[t]his short time period [from the commencement of the traffic stop at 1:19 a.m. to the canine sniff beginning at 1:32 a.m.] did not reflect any delay on the part of Sgt. Turner and supports the State's contention that the traffic stop was ongoing," the trial court also found that "at the time the canine was performing its sniff of the exterior of the vehicle, Sgt. Turner was engaged in the process of explaining the traffic citation to the Defendant" and that Officer Turner "had not completed the traffic stop prior to the time of the canine sweep of the vehicle." Appellant's App'x 76-77.

While the determination of reasonable suspicion and probable cause requires de novo review on appeal, a trial court's determination of historical fact is entitled to deferential review. <u>Ornelas v. United States</u>, 517 U.S. 690, 695-99, 116 S.Ct. 1657, 1661-63, 134 L.Ed.2d 911, 918-20 (1996). Both the defendant and the State agree that the court on appeal does not reweigh the evidence but considers the evidence most favorably to the trial court's ruling. *See* <u>Duncan v. State</u>, 799 N.E.2d 538, 542 (Ind. Ct. App. 2003); <u>Sullivan v. State</u>, 748 N.E.2d 861, 865 (Ind. Ct. App. 2001). A trial court's factual findings will not be overturned unless clearly erroneous. <u>Fair</u>

4

v. State, 627 N.E.2d 427, 434 (Ind. 1993).  Because it is supported by the facts and inferences from the record, we find no error in the trial court's determination of historical fact that the canine sniff test occurred while the traffic stop was ongoing.

*B.  Canine Sniff Test and Probable Cause*

The defendant next contends that, even if conducted in the course of the traffic stop, the canine sniff search and the ensuing search of the vehicle's interior were constitutionally improper because of the absence of probable cause.  As noted above, however, the United States Supreme Court has determined that the use of such narcotics-detection dogs to sniff the exterior of an automobile does not implicate Fourth Amendment privacy interests.  Probable cause is thus not a prerequisite to the use of this police investigative technique.

We are persuaded that the positive reaction of the narcotics-detection dog to the exterior of the defendant's vehicle, however, especially in light of the defendant's dilated pupils, his extreme nervousness, and the presence of heavy cologne mist, constituted probable cause for further police investigation regarding the contents of the vehicle's interior.

*C.  Vehicle Mobility and Warrantless Vehicle Search*

The defendant also urges that because his vehicle was not mobile, the warrantless search of the interior of his vehicle was not justified by the automobile exception to the warrant requirement.  He argues that the automobile exception is inapplicable to this case because there was no probable cause and because his vehicle was not readily mobile.  As discussed above, we have determined that probable cause did exist.  We thus turn our attention to the issue of mobility.  The defendant argues there was no ready mobility because the police officer pulled up behind his parked car so that the defendant could not move his vehicle.

As a general rule, the Fourth Amendment prohibits warrantless searches, but there are exceptions to the warrant requirement.  Black v. State, 810 N.E.2d 713, 715 (Ind. 2004).  In this case, the trial court denied the defendant's motion to suppress evidence resulting from the war-

5

rantless search based on the automobile exception to the warrant requirement.

The automobile exception was first applied in <u>Carroll v. United States</u>, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception was originally based on ready mobility and exigent circumstances. *See* <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 459-60, 91 S.Ct. 2022, 2034-35, 29 L.Ed.2d 564, 579 (1971). The United States Supreme Court later made clear that separate exigent circumstances are not required for the automobile exception to apply because "[t]he mobility of automobiles . . . 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.'" <u>California v. Carney</u>, 471 U.S. 386, 391, 105 S.Ct. 2066, 2069, 85 L.Ed.2d 406, 413 (1985) (quoting <u>South Dakota v. Opperman</u>, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976)); *see also* <u>Maryland v. Dyson</u>, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442, 445 (1999) ("'[T]he 'automobile exception' has no separate exigency requirement . . . . [I]n cases where there [is] probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*.'") (quoting <u>United States v. Ross</u>, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164-65, 72 L.Ed.2d 572, 584 (1982)); <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031, 1036 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."). Furthermore, the exception is based not only on ready mobility but also on the lesser expectation of privacy with respect to automobiles, so that even where an automobile is not immediately mobile, a warrantless search may still be justified. <u>Labron</u>, 518 U.S. at 940, 116 S.Ct. at 2487, 135 L.Ed.2d at 1036.

In <u>Dyson</u>, the United States Supreme Court held that police need not obtain a search warrant before searching a vehicle that they have probable cause to believe contains illegal drugs. The Court emphasized that the automobile exception "does not have a separate exigency requirement," *id.*, 527 U.S. at 467, 119 S.Ct. at 2014, 144 L.Ed.2d at 445, and that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Id.* (quoting <u>Labron</u>, 518 U.S. at 940, 116 S.Ct. at 2485, 135 L.Ed.2d at 445).

Unfortunately, the adjective "readily" is subject to differing interpretations, and there has been disagreement regarding the meaning of "readily mobile." Decisions of the Indiana Court of Appeals are not consistent regarding whether automobiles under police observation or control are readily mobile so as to be subject to warrantless search under the automobile exception. *E.g., compare,* Scott v. State, 775 N.E.2d 1207, 1211 (Ind. Ct. App. 2002) (legally parked automobile surrounded by police officers held not inherently mobile to qualify for automobile exception), *transfer denied*, *and* Edwards v. State, 768 N.E.2d 506, 508-09 (Ind. Ct. App. 2002) (impounded vehicle no longer "inherently mobile"), *trans. not sought*, *with* Johnson v. State, 766 N.E.2d 426, 433 (Ind. Ct. App. 2002) (holding that ready mobility existed when a car was capable of being driven, even after the driver was arrested and despite the absence of other potential drivers), *trans. denied*, *and* Justice v. State, 765 N.E.2d 161, 163 (Ind. Ct. App. 2002), as modified on re-hearing, 767 N.E. 2d 995, 996 (Ind. Ct. App. 2002), *trans. not sought* (finding warrentless search of an automobile in apartment complex parking area, where driver was handcuffed and being questioned in police car, was justified because of "the inherent mobility of automobiles").

Some cases from other courts have declined to apply the automobile exception where the automobile is entirely immobile or is not situated for transportation. *See, e.g.,* State v. Kypreos, 115 Wash. App. 207, 216, 61 P.3d 352, 357 (Wash. App. 2002) (automobile exception did not apply to a fifth wheel trailer that was not attached to any vehicle so was not readily mobile); Lavicky v. Burnett, 758 F.2d 468, 475 (10th Cir. 1985) (automobile exception did not apply to a car that was towed and searched by the police the day after an arrest and was immobile because its engine was partially dismantled).

But several other courts have found that vehicles temporarily in police control or other-wise not at risk of being driven away may still be considered readily mobile, so as to qualify for the automobile exception. These cases base ready mobility not on the immediate capabilities of an automobile but rather its inherent capabilities. *See, e.g.,* United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003) ("All that is necessary to satisfy [the readily mobile] element is that the automobile is operational."); United States v. Mercado, 307 F.3d 1226, 1229 (10th Cir. 2002) (holding that the automobile exception applied to a car that had broken down and was to be re-

7

paired during the night and operable the next morning because the car had not lost its inherent mobility); United States v. Vasquez, 297 F. Supp. 2d 696, 698 (S.D.N.Y. 2004) (holding that a vehicle was readily mobile even though it was locked and its owner was in police custody because other individuals might also have access to the car); People v. Carter, 250 Mich. App. 510, 515, 655 N.W.2d 236, 239 (Mich. App. 2002) ("[A]pplication of the well-established automobile exception does not rise or fall depending on the peculiarities of the automobile to be searched. On the contrary, the exception was established because of the mobility of automobiles *in general*.").

In light of the Supreme Court's recent emphatic statement in Dyson that the automobile exception "does not have a separate exigency requirement," 527 U.S. at 467, 119 S.Ct. at 2014, 144 L.Ed.2d at 445, we conclude that this exception to the warrant requirement under the Fourth Amendment does not require any additional consideration of the likelihood, under the circumstances, of a vehicle being driven away. Rather, we understand the "ready mobility" requirement of the automobile exception to mean that all operational, or potentially operational, motor vehicles are inherently mobile, and thus a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present. This broad understanding of "readily mobile" is also consistent with the recognition that, for Fourth Amendment purposes, an individual is deemed to have a reduced expectation of privacy in an automobile. Labron, 518 U.S. at 940, 116 S.Ct. at 2487, 135 L.Ed.2d at 1036; Carney, 471 U.S. at 393, 105 S.Ct. at 2070, 85 L.Ed.2d at 414.

In the present case, the defendant's car was readily mobile and thus eligible for the automobile exception regardless of the fact that it may have been temporarily confined by physical circumstances including the position of Officer Turner's police vehicle blocking it from the rear. Because the positive narcotics dog response provided probable cause to search the readily mobile vehicle, the warrantless search of it was justified under the automobile exception.

## II. Article 1, Section 11 of the Indiana Constitution

8

The defendant separately claims that the warrantless search of his automobile violated Article 1, Section 11 of the Indiana Constitution, our state Search and Seizure clause.[1] He argues that "[t]he totality of circumstances surrounding the search and seizure exemplify the unreasonableness of the police activities." Appellant's Br. at 17.

While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001); Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind. 1999); Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005) (citing Moran, 644 N.E.2d at 539). "We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* at 360. In Litchfield, we summarized this evaluation as follows:

> In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

*Id*. at 361.

In Brown v. State, 653 N.E.2d 77 (Ind. 1995), a seminal case separately applying both the federal and state constitutional prohibitions against unreasonable search and seizure, the facts bore several similarities to the present case. The police performed a warrantless search of an unoccupied automobile found parked along the public street in a residential neighborhood and surrounded by police cars. We noted "little likelihood that the car would be moved," and "neither a shortage of time nor an emergency," and that "police were not engaged in a community caretak-

---

[1] This provision states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

ing function." *Id.* at 80. A witness had seen a similar automobile suspiciously leaving the scene of a robbery the previous day. We observed that "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion," *id.*, and stated: "We are extremely hesitant to countenance their casual violation, even by law enforcement officers who are attempting to solve serious crimes." *Id.* at 80 n.3. Holding that the warrantless search was unreasonable and that the resulting evidence should have been suppressed, we explained that "[o]nly by such suppression can the privacy of all Hoosiers be adequately protected." *Id.* at 80.

In the present case, the State at trial presented evidence that the defendant displayed behavior that made the initial stopping officer suspicious and that a narcotics-detecting dog alerted upon a sweep of the exterior of the defendant's car. The defendant argues that this evidence does not support a finding that the search of his car was reasonable under the totality of the circumstances emphasizing primarily that his car was parked on private property in the driveway to his residence, despite acknowledging that the officer noted the scent of cologne in the defendant's vehicle, observed the defendant's nervousness, had previously received information concerning the defendant's possible drug activity, and considered that the narcotics-detecting dog alerted upon sniffing the automobile.

Our reversal upon a finding of unreasonableness in <u>Brown</u> noted several factors also present here. Both cases involved police automobile searches without a warrant, vehicles not obstructing traffic or otherwise warranting removal, and the presence of police cars making it appear unlikely that the car would be moved. But there are differences as well. Unlike <u>Brown,</u> where the vehicle was unoccupied, the defendant here was present, not under arrest at the time the interior search was commenced, and free to drive his vehicle away and dispose of the contraband contained within. The <u>Brown</u> search was done at mid-day, whereas the present search occurred after midnight, making prompt access to a magistrate more difficult. The vehicle in <u>Brown</u> was but a possible match to one seen leaving a scene of a robbery a day earlier. Whether it contained contraband was a matter of speculation and conjecture until after it was searched. In the present case, the searched vehicle was unquestionably the one driven by the defendant, who exhibited suspicious behavior during a traffic stop, and the very one positively identified by a police canine sniff test for the presence of drugs.

10

Considering and balancing the non-exclusive factors identified in <u>Litchfield</u>, we conclude that the interior search of the defendant's car was reasonable under the circumstances. First, there was a significant "degree of concern, suspicion, or knowledge that a violation has occurred." <u>Litchfield</u>, 824 N.E.2d at 361. The information known to police clearly related to the vehicle to be searched, and there were significant indicators that it contained contraband. Second, the interior search of the defendant's personal car was likely to impose an intrusion "on the citizen's ordinary activities," *id.*, but we recognize that, to a limited extent, the intrusion, at least as to public notice and embarrassment, was somewhat lessened because of the hour and place of the search. Third, "the extent of law enforcement needs," *id.*, requires consideration of the availability of a magistrate to consider issuance of a warrant, and the fact that, in the absence of police seizure of the car by blocking it, it could be driven away by the defendant who was present at the time and not under arrest.

## Conclusion

We conclude that the warrantless search of the defendant's vehicle did not violate the search and seizure provisions of either the federal Fourth Amendment or Article 1, Section 11 of the Indiana Constitution. The judgment of the trial court is affirmed.

Shepard, C.J., and Sullivan and Boehm, JJ., concur
Rucker, J., concurs in Part I and concurs in result in Part II

11