**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**EUGENE C. HOLLANDER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JESSICA E. MANTOOTH, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 24A01-1108-CR-382 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE FRANKLIN CIRCUIT COURT
The Honorable J. Steven Cox, Judge
Cause No. 24C01-1010-FA-58

**March 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Jessica E. Mantooth (Mantooth), appeals her conviction for Count I, possession of methamphetamine with intent to deal, a Class A felony, Ind. Code § 35-48-4-1.1(b); Count III, neglect of a dependent, a Class D felony, I.C. § 35-46-1-4(a)(1); Count IV, possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a)(1); and Count V, driving while suspended, a Class A misdemeanor, I.C. § 9-24-19-2.

We affirm.

## ISSUES

Mantooth raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion when it admitted evidence obtained as a result of a canine exterior sniff of Mantooth's vehicle; and

(2) Whether the State produced sufficient evidence to prove beyond a reasonable doubt that she committed possession of methamphetamine with intent to deal.

## FACTS AND PROCEDURAL HISTORY

On October 12, 2010, Mantooth drove her boyfriend, Paul Kinnaman (Kinnaman), from Indianapolis to Brookville so that he could meet with his parole officer and pay his child support obligation. Mantooth borrowed a vehicle from a friend for the trip and brought along her four-year-old daughter, J.M., who sat in the back seat. At approximately 11:00 a.m., Indiana State Trooper Barry Bischoff (Trooper Bischoff), a k-9 officer, began following Mantooth. Trooper Bischoff was able to see that there was a

2

lot of commotion inside the vehicle Mantooth was driving, and he observed the vehicle drift left of center three times. After the third time, Trooper Bischoff initiated a traffic stop. When he asked Mantooth for her driver's license and registration, he noticed that she was shaking uncontrollably and that her voice was raspy. Mantooth searched her purse for her driver's license but was unable to find it. Trooper Bischoff then obtained information from both Mantooth and Kinnaman, who handed him a state ID.

At that time, Indiana State Trooper Jeremy Franklin (Trooper Franklin) arrived on the scene. The Troopers ran Mantooth's information and discovered that her license had been suspended. Trooper Franklin wrote Mantooth a citation while Trooper Bischoff walked his canine, Gaston, around the vehicle for an open air sniff. After Gaston alerted at the driver's side door, the Troopers searched the interior of the vehicle. Trooper Bischoff noticed that there was a "flap" on the middle console, so he lifted the flap and it came right off. (Transcript p. 22). Inside, he found a blue pouch containing a glass smoking pipe and empty baggies, as well as digital scales and three baggies filled with a crystal substance. The substance was later identified as approximately five and a half grams of methamphetamine. The troopers also found a stick of women's deodorant with no cap on it in the console. Inside of Mantooth's purse, which was sitting on the backseat, the Troopers discovered a deodorant cap that matched the deodorant stick they had found inside the console.

The Troopers arrested Mantooth and Kinnaman and took them to jail. There, the Troopers discovered that Mantooth had $351 on her, and Kinnaman had $507 dollars on

3

him. Mantooth also admitted that she had used methamphetamine a few days before the incident.

Because of Mantooth and Kinnaman's arrest, the Troopers also called child protective services (CPS) to take care of J.M. CPS placed J.M. with Mantooth's grandparents and tested J.M. for methamphetamine. The results were positive and indicated a "high" amount of methamphetamine in her system. (Tr. p. 50).

On October 14, 2010, the State filed an Information charging Mantooth with Count I, possession of methamphetamine with intent to deal, a Class A felony, Ind. Code § 35-48-4-1.1(b); Count II, possession of methamphetamine, a Class D felony, I.C. § 35-48-4-6.1(a); Count III, neglect of a dependent, a Class D felony, I.C. § 35-46-1-4(a)(1); Count IV, possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a)(1); and Count V, driving while suspended, a Class A misdemeanor, I.C. § 9-24-19-2. On June 6-8, 2011, a jury trial was held. At trial, Mantooth admitted that the deodorant the Troopers had found in the center console was hers, although she asserted that Kinnaman had taken it out of her bag and put it in the console. Mantooth claimed to have otherwise never seen any of the other items that the Troopers found in the console.

At the conclusion of the evidence, the jury found Mantooth guilty as charged. On July 20, 2011, the trial court held a sentencing hearing and found that Count II merged into Count I. The trial court subsequently sentenced Mantooth to 42 years on Count I, with 12 years suspended, 3 years on Count III, 365 days on Count IV, and 365 days on

Count V. It ordered Counts III, IV, and V to be served concurrently but consecutive to Mantooth's sentence on Count I.

Mantooth now appeals. Additional facts will be provided as necessary.

## DISCUSSION

### I. *Canine Search*

First, Mantooth argues that the State did not provide adequate evidence that Officer Bischoff's canine, Gaston, was certified, so there was no probable cause for the Troopers to search her vehicle. By extension, Mantooth asserts that the trial court should not have admitted the evidence the Troopers found in her vehicle because it was found pursuant to an illegal search.

Preliminarily, we note that the admission or exclusion of evidence falls within the sound discretion of the trial court, and the trial court's determination regarding the admissibility of evidence is therefore reviewed on appeal only for an abuse of discretion. *Alsheik v. Guerrero,* 956 N.E.2d 1115, 1128 (Ind. Ct. App. 2011), *reh'g denied*. An abuse of discretion occurs where the decision is clearly against the logic of the facts and circumstances before the court. *Troutner v. State,* 951 N.E.2d 603, 611 (Ind. Ct. App. 2011), *trans. denied.* Mantooth raises this issue on two grounds—the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution. We will address each ground separately.

### A. *Fourth Amendment*

The Fourth Amendment of the United States Constitution protects citizens from

5

unreasonable searches and seizures. U.S. CONST. amend. IV. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Cheatham v. State,* 819 N.E.2d 71, 74 (Ind. Ct. App. 2004). We have held that a search falls within an "automobile exception" to the warrant requirement where (1) the vehicle was readily mobile or capable of being driven when the police first seized it; and (2) probable cause existed that the vehicle contained contraband or evidence of a crime. *Id.* at 75.

As is relevant here, a positive indication by a properly-certified dog is sufficient to establish probable cause for the presence of a controlled substance. *See State v. Hobbs,* 933 N.E.2d 1281, 1286 (Ind. 2010). The Sixth Circuit Court of Appeals determined that a dog's training and reliability is established for purposes of admitting the canine's alert where "the evidence is presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog." *U.S. v. Howard,* 621 F.3d 433, 447 (6th Cir. 2010), *reh'g and reh'g en banc denied, cert. denied,* 131 S.Ct. 2899 (2011). We find this reasoning persuasive.

In light of the above standard, we do not agree with Mantooth that the State did not sufficiently establish Gaston's certification. As stated in *Howard,* testimony of proper certification is sufficient. *See id.* Trooper Bischoff testified that he had certificates showing Gaston's training. He also testified that Gaston had been trained to detect six different drugs, including methamphetamine, that Gaston received training once a month in Indianapolis, as well as additional training locally, and that out of the

6

three years Officer Bischoff had been working with Gaston, Gaston had made approximately 150 detections, out of which only three or four could not be substantiated. We find that this extensive evidence was sufficient to prove that Gaston was properly certified. Thus, we conclude that there was sufficient probable cause for the Troopers to search Mantooth's vehicle. The trial court therefore properly admitted the evidence the Troopers found as a result of the search.

## B. *Article I, Section 11*

In addition, Mantooth claims that the warrantless search of her automobile violated Article I, Section 11 of the Indiana Constitution, our state search and seizure clause. While almost identical in wording to the federal Fourth Amendment, we give Article I, Section 11 an independent interpretation and application. *Myers v. State,* 839 N.E.2d 1146, 1153 (Ind. 2005). To determine whether a search or seizure violates the Indiana Constitution, courts must evaluate the "reasonableness of the police conduct under the totality of the circumstances." *Id.* (quoting *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005)). In *Litchfield,* the supreme court explained that although there might be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of "(1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs." *Litchfield,* 824 N.E.2d at 361.

In *Myers,* the supreme court addressed circumstances similar to the instant case. There, a police officer pulled over Myers for speeding and turning onto a street without signaling. *Myers*, 839 N.E.2d at 1148. When the officer requested Myers' driver's license and registration, he noticed that Myers' hands were shaky and that he appeared very nervous. *Id.* The officer also noticed that there was a strong smell of cologne in the vehicle, which he knew was often used to mask the lingering odor of contraband. *Id.* When the officer identified Myers, he became even more suspicious that there was contraband in the vehicle as the Goshen, Indiana Drug Unit had previously informed members of the police department that Myers was suspected of drug activity. *Id.* Shortly thereafter, another officer reported to the scene with a canine. The canine conducted an exterior sniff of the vehicle and alerted to the car's exterior passenger side. *Id.* at 1149. Upon a further interior search of the vehicle, the police officers discovered methamphetamine and marijuana. *Id.*

On appeal, the supreme court concluded that the officers' warrantless search did not violate Article I, Section 11 based on the *Litchfield* balancing test. *Id.* at 1154. With respect to the first prong of the test, the supreme court found that there were significant indicators that Myers' vehicle contained contraband. *Id.* With respect to the second prong, the supreme court noted that although the interior search of Myers' vehicle was likely to impose an intrusion on his ordinary activities, that impact was lessened, at least as to public notice and embarrassment, due to the hour and place of the search—1 a.m. at Myers' residential home. *Id.* at 1148, 1154. Finally, the supreme court found it

significant to law enforcement needs that absent the police seizure, the vehicle could be driven away by Myers, who was present and not under arrest. *Id.* at 1154.

Similarly, we conclude that the Troopers' search of Mantooth's vehicle did not violate Article I, Section 11 under the *Litchfield* balancing test. First, there were significant indicators that Mantooth's car contained contraband. Trooper Bischoff noticed that Mantooth was shaking uncontrollably and that her voice was raspy. Likewise, Trooper Franklin testified that Mantooth's nervousness did not disappear after he told her that he would not arrest her for having a suspended license and that the suspended license was "not a big deal." (Tr. p. 79). Then, Gaston alerted at the driver's side door, thereby indicating the presence of contraband. Further, although the search was likely to impose an intrusion on Mantooth's ordinary activities, the degree of law enforcement need was great. *See Litchfield,* 824 N.E.2d at 361. As in *Myers,* Mantooth was present and not under arrest at the time of the Trooper's search. She therefore could have easily driven her vehicle away and obstructed the law enforcement investigation. When we weigh these factors as instructed by the supreme court in *Litchfield,* we conclude that the search did not violate Article I, Section 11 of the Indiana Constitution. Thus, the trial court did not abuse its discretion in admitting the evidence resulting from the search.

## II. *Sufficiency of the Evidence*

Next, Mantooth argues that the State did not prove beyond a reasonable doubt that she committed possession of methamphetamine with intent to deal because the State did

not prove that she constructively possessed the methamphetamine. In reviewing a sufficiency of the evidence claim, this court does not reweigh evidence or judge the credibility of witnesses. *Perez v. State,* 872 N.E.2d 208, 213 (Ind. Ct. App. 2007), *trans. denied.* In addition, we only consider the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.* We will only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.* at 212-13.

In order to convict Mantooth of possession of methamphetamine with intent to deal as a Class A felony, the State was required to prove that she possessed 3 grams or more of pure or adulterated methamphetamine with the intent to deal.[1] We have long recognized that a conviction for possession of contraband may be founded upon actual or constructive possession. *Holmes v. State,* 785 N.E.2d 658, 660 (Ind. Ct. App. 2003). Actual possession occurs when a defendant has direct physical control over an item, whereas constructive possession occurs when a person has (1) the capability of maintaining dominion and control over the item, and (2) the intent to maintain dominion and control over the item. *Seel v. State,* 739 N.E.2d 170, 172 (Ind. Ct. App. 2000).

A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item. *Gray v. State,* 957 N.E.2d

---

[1] We will only address Mantooth's possession of the methamphetamine as she does not dispute the amount of the drug or her intention to deal.

10

171, 174 (Ind. 2011). We allow this inference even when that possessory interest is not exclusive. *Id.*

A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from that defendant's possessory interest in the premises, even when that possessory interest is not exclusive. *Id.* When possession of the premises is not exclusive, though, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and nature of the item, such as: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) the defendant's proximity to the contraband; (5) the contraband is in plain view; and (6) the proximity of the contraband to items owned by the defendant. *Id.* at 174-75.

Here, Mantooth had a possessory interest in the premises where the Troopers found the methamphetamine—the vehicle—as its driver. *See Seel,* 739 N.E.2d at 172 ("Actual possession occurs when a person has direct physical control over an item."). Even though her possessory interest was not exclusive, this is sufficient for the trier of fact to infer that Mantooth was capable of maintaining dominion and control over the methamphetamine. *See Gray,* 957 N.E.2d at 174.

As her possessory interest was not exclusive, however, the State was required to support the inference that Mantooth had the intent to maintain dominion and control over the drugs with additional evidence. *See id.* Based on the record, we conclude that the State's evidence was sufficient beyond a reasonable doubt for the trier of fact to make

such an inference. First, Mantooth's deodorant was in the center console along with the drugs. While Mantooth testified that Kinnaman placed her deodorant in the center console, it is not our place to reweigh the evidence or determine the credibility of witnesses on appeal. *See Perez,* 872 N.E.2d at 213. In addition, as we noted in our discussion of the previous issue, Trooper Franklin testified that Mantooth's nervousness did not disappear after he told her that he would not arrest her for having a suspended license and that the suspended license was "not a big deal." (Tr. p. 79). Finally, Mantooth had a significant amount of cash on her and gave contradictory statements regarding her knowledge of the drugs. First, she told Trooper Franklin that she did not know anything about the methamphetamine, then she admitted that she saw Kinnaman put the methamphetamine into the center console, then she told Trooper Franklin that she thought the methamphetamine was marijuana, and ultimately she recanted her statement and said that she did not remember seeing Kinnaman put anything into the center console.

In light of these additional factors, we conclude that the State presented sufficient evidence that Mantooth knew of the presence and the nature of the methamphetamine, which was in turn sufficient for the jury to infer that she had the intent to maintain dominion and control over the methamphetamine and thus constructively possessed it. Accordingly, we also conclude that the State presented sufficient evidence beyond a reasonable doubt to convict Mantooth of possession of methamphetamine with the intent to deal as a Class A felony.

## CONCLUSION

Based on the foregoing, we conclude that: (1) the trial court did not abuse its discretion when it admitted the evidence obtained as a result of a canine exterior sniff of Mantooth's vehicle, and (2) the State produced sufficient evidence to prove beyond a reasonable doubt that Mantooth committed possession of methamphetamine with intent to deal.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur