# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 22 2016, 9:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Cara Schaefer Wieneke
Special Asst. to the Henry County
Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff*,

v.

Terrence L. Hawkins,

*Appellee-Defendant*.

November 22, 2016

Court of Appeals Case No.
33A05-1603-CR-562

Appeal from the Henry Circuit Court

The Honorable Mary G. Willis, Judge

Trial Court Cause No.
33C01-1007-FB-35

**Brown, Judge.**

The State of Indiana appeals the trial court's order granting a motion to suppress filed by Terrence L. Hawkins. The State raises one issue which we revise and restate as whether the trial court erred in granting Hawkins's motion to suppress. We affirm.

### Facts and Procedural History

Shortly after noon on July 8, 2010, Richmond Police Officer David Glover observed a vehicle drive past on Interstate 70 at a high rate of speed. Officer Glover initiated a traffic stop and approached the vehicle. Officer Glover spoke to the driver, Hawkins, and the front seat passenger, Williams, and detected the odor of burnt marijuana coming from the vehicle. He noticed "some marijuana shake, small fragments of marijuana on the center console," and asked Hawkins to step out of the vehicle. Transcript at 5. Officer Glover patted down Hawkins for weapons, asked him to identify an object in his pocket, and Hawkins answered that it was "two Gs," which is a street term for $2,000.[1] *Id.* at 21.

Officer Glover spoke to the passenger, approached Hawkins again, had Hawkins sit in the front seat of the patrol vehicle, and called two other officers to the scene because of the odor of marijuana coming from the vehicle as well as the odor of alcohol on Hawkins's breath. Officer Glover ran Hawkins's driver's license and the information for the passenger and started issuing a traffic ticket for speeding.

---

[1] Officer Glover later determined that the amount was $1,862.

[4] Henry County Sheriff's Sergeant Jim Goodwin and Hancock County Sheriff's Deputy Nick Ernstes arrived at the scene. Sergeant Goodwin and Deputy Ernstes reported to Officer Glover that they could also smell burnt marijuana and see a couple of pieces of shake. Deputy Ernstes spoke with Hawkins and detected the odor of an alcoholic beverage on his breath. Deputy Ernstes then spoke with Williams in Hawkins's vehicle and smelled the odor of burnt marijuana coming from inside the car. Deputy Ernstes talked to Williams about the smell of marijuana, and Williams stated that he had been smoking marijuana at some point. Deputy Ernstes asked Williams to step out of the patrol vehicle, and after Williams did so, Deputy Ernstes could see loose green particles of marijuana on the floor board where he had been seated.

[5] Deputy Ernstes handcuffed Williams, told him he was not under arrest, and read him his rights. Deputy Ernstes asked Williams if he knew there was marijuana in the car, and Williams said that he "thought there was." *Id.* at 38. Williams "wasn't specific in nature in where it was, but he told [Deputy Ernstes] he thought it was in there." *Id.* Williams admitted "that he had been smoking marijuana and that he had . . . had marijuana on the [sic] possession." *Id.* at 40.

[6] Based upon the odor of burnt marijuana and observing the "shake" or raw marijuana, the police then searched the vehicle, and Officer Glover located a "blunt package" with two marijuana cigarettes in it in the ash tray of the passenger compartment and a set of digital scales in the center console. *Id.* at 8. Hawkins and the passenger were arrested for possession of marijuana,

handcuffed, and placed in the patrol vehicles. After the arrest, Sergeant Goodwin and Deputy Ernstes then searched the trunk and found a marijuana bong inside a sack and two handguns.

[7] On July 9, 2010, the State charged Hawkins with possession of a firearm by a serious violent felon as a class B felony, possession of marijuana as a class A misdemeanor, and possession of paraphernalia as a class A misdemeanor. In 2011, the court issued a bench warrant after Hawkins failed to appear. In August 2015, the warrant was served, and the court held a hearing.

[8] On November 4, 2015, Hawkins filed a motion to suppress the evidence seized from his person and property and argued that the stop, detention, search, and arrest were without probable cause, a warrant, or valid consent. He argued that his arrest, detention, and seizure of his property were in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. On January 4, 2016, the court held a hearing on the motion.

[9] On February 4, 2016, the court entered an order granting Hawkins's motion to suppress as it related to the evidence seized from the trunk and denied the motion as to all other evidence seized. Specifically, the court found that the traffic stop was valid and the drug material on the console was in plain sight and validly seized and that the search of Hawkins was conducted with consent and was valid for both officer safety and as a search incident to arrest. The order then states:

4. . . . . [Hawkins] was handcuffed and placed in the back of the police vehicle. The search of the trunk of the vehicle was conducted without a warrant and the court finds no exception for the trunk of the vehicle due to officer safety. The Court finds that the weapons were not in plain sight and were not under the control of [Hawkins] or the passenger. The Court finds that there is no evidence that the Officer reasonably believed that his safety was in jeopardy while waiting for further officers.

5. One exception to the warrant requirement is the automobile exception. The State further argues that the "automobile exception" permitted the warrantless search of the entire vehicle. In *Johnson v. State*, 766 N.E.2d 426 (Ind. Ct. App. 2002), [*trans. denied*,] also involving unlawful possession of a firearm by a serious violent felon, the search under the hood of a vehicle following a tip that a gun could be found under the hood of the vehicle was valid because the threat of harm and loss of evidence was significant and the vehicle was readily mobile. However, the automobile exception is not without its limitations. Here, there was no threat of harm and the threat of loss of evidence was insignificant.

6. One exception to the warrant requirement is an inventory search of a properly impounded vehicle, *Fair v. State*, 627 N.E.2d 427 (Ind. [1993]). As stated in *Edwards v. State*, 762 N.E.2d 128 (Ind. Ct. App. 2002), [*aff'd on reh'g*, 768 N.E.2d 506, *trans. denied*,] "to show that its actions come within the inventory exception, the State must do more than offer the bald allegation of law enforcement that the search was conducted as a routine inventory" for the trial court to determine if there is an evidentiary basis to evaluate whether the inventory search "was in conformity with established local law enforcement policy". Although at the hearing, Officer Glover testified to an "inventory search" conducted after the arrest and prior to the vehicle being towed, this information is not contained within the police report where the search is referred to as a "PC search." [State's Exhibit

1]. No evidence was provided to the Court to establish that this was an inventory search pursuant to any established law enforcement procedure or protocol. Here, there wasn't even a bald allegation of a local law enforcement policy or its compliance.

7. The Court finds that the officer's testimony that, in his training and experience, there may be additional drug evidence in the car was accurate. However, that should have prompted either an application for a search warrant or strict compliance with an established law enforcement protocol on an inventory search. The undersigned commends the work of the PACE team and recognizes the many improvements made in the process since it was initiated nearly six years ago.

8. The Court of Appeals recently issued an opinion on nearly identical facts in *Rhodes v. State*, [50 N.E.3d 378,] (Ind. Ct. App. Jan. 19, 2016), which found the inventory search was unreasonable because the State did not prove the scope of the search complied with official police policy. In *Rhodes*, the testimony was even greater regarding an inventory search than was presented here.

9. The Court finds that the warrantless search of the trunk of the vehicle without consent and without evidence of the established protocols and procedures of a valid inventory search was invalid. The seizure of the fruits of the invalid search of the trunk of the vehicle, the weapons, were poisoned by the improper search without a warrant. The drug material and paraphernalia were discovered in plain sight and seizure of these items was valid, however, the ends, do not justify the means of discovery of the weapons in the trunk of the vehicle.

10. The items in the trunk of the vehicle were not in plain view and there is no evidence that there was a concern for officer

safety since [Hawkins] had been arrested, handcuffed and placed in the police vehicle. The Court finds that there was a basis for the stop and brief detention seeking the assistance of the fellow PACE officer based upon the strong odor of marijuana, and the seizure of the marijuana and paraphernalia was valid, but there was no basis for the warrantless search of the trunk of the vehicle and it does meet [sic] the automobile exception.

11. The search of the vehicle of the trunk [sic] without a warrant and the seizure of the weapons from the trunk without a valid warrant was improper and no valid automobile or inventory exception existed.

12. The Court finds the evidence seized from the trunk of the vehicle without a valid warrant was not within the inventory search exception, and the State shall be prohibited from introducing any evidence seized from the trunk of [Hawkins's] vehicle without a warrant.

Appellant's Appendix at 95-97 (underlining and italics omitted).

[10] On February 16, 2016, the State filed a motion to correct error. On March 8, 2016, the court again found that the evidence seized from the trunk was without consent or a valid warrant and was not within the automobile or inventory exceptions and denied the State's motion to correct error.

## Discussion

[11] The issue is whether the trial court erred in granting Hawkins's motion to suppress. "In reviewing a trial court's motion to suppress, we determine whether the record discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Renzulli*, 958 N.E.2d 1143, 1146

(Ind. 2011) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006)). "We do not reweigh the evidence, but consider 'conflicting evidence most favorably to the trial court's ruling.'" *Id.* (quoting *Quirk*, 842 N.E.2d at 340). "When the State appeals from a negative judgment, as here, it 'must show that the trial court's ruling on the suppression motion was contrary to law.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008), *reh'g denied*). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[12] The State argues that the search of the trunk was properly performed under the automobile exception to the warrant requirement. The State asserts that Hawkins admitted that police had probable cause to search his car and that, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. Appellant's Brief at 14 (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)). The State contends that the automobile exception does not require that there be an imminent possibility the vehicle may be driven away. *Id.* at 15 (citing *State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010)). It argues that the trial court required more of the officers than was demanded by the Fourth Amendment by looking for exigent circumstances that endangered the officers or risked destruction of evidence, and that the search of the trunk for illegal drugs was reasonable under the Indiana Constitution.

[13] Hawkins concedes that the State is correct that the odor of burnt marijuana gave Officer Glover the authority to search the vehicle for evidence of contraband, but argues that once Officer Glover found that evidence, under the holdings in *Horton v. California*, 496 U.S. 128 (1990) and *Gonser v. State*, 843 N.E.2d 947 (Ind. Ct. App. 2006), he was required to terminate the warrantless search. Hawkins asserts that the officers had no authority under the automobile exception to continue searching the vehicle after they discovered the marijuana. He also argues that the search was not reasonable under Article 1, Section 11 of the Indiana Constitution. In reply, the State contends that the cases upon which Hawkins relies are clearly distinguishable because the object of the search in those cases was a specific, readily identifiable, and finite item, not a general class of evidence of unknown quantity as in this case.

[14] We focus on the Indiana Constitution as we find it dispositive. Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

[15] "Although this language tracks the Fourth Amendment verbatim, we proceed somewhat differently when analyzing the language under the Indiana Constitution than when considering the same language under the Federal Constitution." *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006), *adhered to on*

*reh'g*, 848 N.E.2d 278 (Ind. 2006). "Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances." *Id.* "We will consider the following factors in assessing reasonableness: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)).

[16] Based upon the odor of burnt marijuana, the marijuana and blunt cigarettes found in the passenger compartment of the vehicle, the set of digital scales in the center console, the money found on Hawkins's person, and Williams's statement that he thought there was marijuana in the car, we conclude that the degree of concern, suspicion, or knowledge that a violation occurred was high.

[17] As for the degree of intrusion, we observe that the Indiana Supreme Court has held that "[w]ith respect to automobiles generally, it may safely be said that Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Brown v. State*, 653 N.E.2d 77, 80 (Ind. 1995). The stop occurred shortly after noon at a time when prompt access to a magistrate would not have been difficult and along Interstate 70 exposing Hawkins to at least some public notice and embarrassment. *Cf. Myers v. State*, 839 N.E.2d 1146, 1154 (Ind. 2005) (addressing a search that occurred at 1:00 a.m. and holding the search occurred at a time when prompt access to a magistrate would be more

difficult and stating: "Second, the interior search of the defendant's personal car was likely to impose an intrusion 'on the citizen's ordinary activities,' but we recognize that, to a limited extent, the intrusion, at least as to public notice and embarrassment, was somewhat lessened because of the hour and place of the search") (internal citation omitted).

[18] With respect to the extent of law enforcement needs, Hawkins and his passenger were already under arrest at the point that the trunk was searched and there was little likelihood that the car would be moved or that the contents of the trunk would have been lost to the police. *Cf. id.* (observing that the defendant was present and not under arrest at the time of the interior search and free to drive his vehicle away and dispose of the contraband contained within, and concluding that the warrantless search of the defendant's vehicle did not violate Article 1, Section 11 of the Indiana Constitution). Under these circumstances, we conclude that the search was unreasonable and violated Article 1, Section 11 of the Indiana Constitution.

## *Conclusion*

[19] For the foregoing reasons, we affirm the trial court's grant of Hawkins's motion to suppress.

[20] Affirmed.

Robb, J., and Mathias, J., concur.