

**FILED**

Jun 30 2016, 7:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Kevin L. Likes
Likes Law Office
Auburn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff*,

v.

Megan J. Cassady,

*Appellee-Defendant*.

June 30, 2016

Court of Appeals Case No.
17A03-1512-CR-2090

Appeal from the DeKalb Superior Court

The Honorable Kevin P. Wallace, Judge

Trial Court Cause No.
17D01-1504-F6-70

**Brown, Judge.**

The State appeals the trial court's grant of Megan Cassady's motion to suppress evidence following a traffic stop and dog sniff. The State raises one issue which we revise and restate as whether the trial court erred in granting Cassady's motion to suppress. We reverse and remand.

*Facts and Procedural History*

On April 19, 2015, DeKalb County Sheriff's Deputy Todd McCormick observed Cassady stop at an intersection and then turn right without allowing any distance between her approach to the intersection and the activation of her turn signal. Deputy McCormick initiated a traffic stop,[1] and called dispatch with the location, the vehicle description, and the license plate information. He then approached Cassady and explained the reason for the stop. Cassady reported: "I am allowed to change my mind, am I not." Transcript at 10. Deputy McCormick obtained her license and observed her become defensive and very guarded in her comments.

He then returned to his vehicle, hooked up his dog "on lead," and requested a license check on Cassady. *Id.* at 13. He then walked his dog around Cassady's vehicle while he waited for dispatch to provide information on her status. The dog went around Cassady's vehicle and alerted for the odor of narcotics prior to

---

[1] Deputy McCormick testified that he initiated the traffic stop because Cassady violated Ind. Code § 9-21-8-25, which provides: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes. A vehicle traveling in a speed zone of at least fifty (50) miles per hour shall give a signal continuously for not less than the last three hundred (300) feet traveled by the vehicle before turning or changing lanes."

the time that dispatch informed Deputy McCormick that Cassady had a valid license. Deputy McCormick took the dog around again, and the dog again alerted for the odor of narcotics, specifically, hitting on the driver and passenger doors. The dog's second alert occurred just prior to or at approximately the same time as dispatch communicated to Deputy McCormick that Cassady had a valid license. Approximately four minutes passed between the time Cassady stopped her vehicle and the completion of the dog sniff. Deputy McCormick then searched the vehicle and discovered drugs under the driver's seat.

[4] On April 21, 2015, the State charged Cassady with possession of methamphetamine as a level 6 felony, possession of paraphernalia as a class A misdemeanor, and failure to signal turn as a class C infraction. On September 17, 2015, Cassady filed a motion to suppress and argued that the search of her vehicle was in violation of the United States and Indiana Constitutions.

[5] On October 14, 2015, the court held a hearing. When asked what he observed, Deputy McCormick answered:

> [A]s I was speaking with her, she became defensive in her, and very guarded in her comments or answering questions that I had for her, and, uh, that's based on experience as a police officer dealing with many people during the day. Uh, just my initial observations of their behaviors and their attitude towards law enforcement.

*Id.* at 11. When asked if he thought everybody is a little nervous when they are pulled over, Deputy McCormick testified: "They are to some degree, but others more than usual. There's no definite difference you can, you just, I can't

explain it to you. It's something that you would have to be able to experience, based on stopping thousands of people." *Id.* at 12. He testified that while he was asking Cassady questions and waiting for her to produce her license, he decided that he was going to remove his dog and perform a scan with the dog. The following exchange occurred during the direct examination of Deputy McCormick:

> Q  Uh, the dog search, which happened first? You got the return on the radio, or you did the dog search and the dog hit?
>
> A  I'm not sure exactly. I know the way that I normally do them, I obtain their return while I am conducting the scan. So, I don't know that I received the result back prior to the alert. I, I probably did, but I was in the middle of conducting a free-air scan while I'm waiting for the return.
>
> Q  Very close in time, hard to say which happened first?
>
> A  Correct.

*Id.* at 16. On cross-examination, Deputy McCormick testified that it was not his intention to walk his dog around all cars that he stopped for a traffic violation.

[6]  Recordings of the radio communications were admitted at the hearing as State's Exhibit 2, consisting of a cd with six recordings, each titled by a time stamp of when the track began recording according to the dispatch computers. One of the recordings with a title of 21.49.07 reveals Deputy McCormick calling in his

location of "Quincy and Randolph" at about ten seconds into the recording. State's Exhibit 2. In a recording titled 21.51.54, Deputy McCormick states "license check on the registered owner." *Id.* In another titled 21.52.50, dispatch states: "she's a valid zero operator," and Deputy McCormick testified that this indicated that Cassady had a valid license. *Id.* The last recording on State's Exhibit 2, titled in part 21.55.43, included Deputy McCormick's statements to dispatch that his dog issued a positive alert on the vehicle.

[7] The court also admitted as State's Exhibit 3 an in-car video recording of Deputy McCormick following Cassady's vehicle and performing the stop and dog sniff. Cassady's vehicle stopped at approximately 0:43 (forty-three seconds) into the video, Deputy McCormick gave his location as "Quincy and Randolph" at 0:59, he exited his vehicle around 1:15, he talked with Cassady and obtained her driver's license between approximately 1:20 and 2:10, he then returned to his vehicle with something in his hand at approximately 2:15-2:20, and he walked his dog around Cassady's vehicle between approximately 3:45 and 4:35. State's Exhibit 3.

[8] On November 5, 2015, the court entered an order granting Cassady's motion to suppress, which states:

> A vehicle driven by Megan Cassady, the Defendant, was stopped for a red light at the corner of Randolph Street and Quincy Street in Garrett, Indiana during the evening of April 19, 2015. While stopped at the light, [Cassady] turned on her right turn signal, and, when the light changed, turned right onto Quincy Street. Deputy Todd McCormick of the DeKalb County Sheriff's

Department, was in a patrol car behind [Cassady], and initiated a traffic stop for violation of I.C. 9-21-8-25 for failing to signal intention to turn not less than 200 feet before turning.

Deputy McCormick's in-car camera recorded the stop. Deputy McCormick approached [Cassady's] driver's side front window. According to Deputy McCormick, [Cassady] (who remained in her vehicle and is not seen at that point in the video), was defensive and guarded. These conclusions were "based on my (Deputy McCormick's) experience. I can't explain. I had suspicions." These conclusions were reached in just a very few seconds of contact with [Cassady]. Deputy McCormick admitted he was working a drug interdiction detail that evening, and had pretty much decided to conduct a free-air dog sniff when he made the stop.

Both sides have cited the recent U.S. Supreme Court case *Rodriguez v. U.S.* for the proposition that [sic], "that a dog search cannot extend a traffic stop unless there is reasonable suspicion for a further, non-traffic investigation" as phrased in the argument section of the State's brief.

Under the facts of this case, there was no reasonably articulable suspicion of criminal activity for a further non-traffic investigation. The State argues that the stop in this case was around three and a half minutes, not twenty-nine minutes as in *Rodriguez*, but neither the total amount of time of the stop nor the sequence of whether the drug dog hit before or after dispatch completed the check of [Cassady's] license are determinative.

As such, the items discovered and seized from [Cassady's] vehicle were taken in violation of the Fourth Amendment of the United States Constitution and will be suppressed.

Appellant's Appendix at 34-35.

*Discussion*

[9] The issue is whether the trial court erred in granting Cassady's motion to suppress. The State asserts that the initial stop was valid because Cassady committed a traffic infraction, and that a dog sniff conducted while a traffic stop is ongoing, before the results of a license check have been received or the ticket written, does not implicate the Fourth Amendment and does not need to be supported by reasonable suspicion of criminal wrongdoing. The State posits that, because the dog sniff did not prolong an otherwise completed stop, it did not violate the Fourth Amendment and that the results of that sniff, in turn, authorized a search of the vehicle pursuant to the automobile exception. It points out that Deputy McCormick had his dog with him when he initiated the stop and did not have to wait for a dog to be brought to the scene, that he called in the license plate number immediately at the initiation of the stop, that he explained the purpose of the stop and obtained Cassady's license and registration, and that he returned to his vehicle to call in the information to run a check on her license. The State contends that it was only while Deputy McCormick was waiting for dispatch to respond with the results of that check that he performed the dog sniff.

[10] The State's position is that the trial court clearly erred as a matter of law in suppressing the evidence on the basis that there was no reasonably articulable suspicion of criminal activity for a further non-traffic investigation, and that *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834 (2005), and the long line of Indiana dog sniff cases require

reasonable suspicion of criminal activity only when the dog sniff occurs *after* the traffic stop has been, or reasonably should have been, completed. The State argues that, at the moment when his dog alerted on Cassady's vehicle, Deputy McCormick had probable cause of criminal wrongdoing that justified any further detention occurring beyond that point in time. The State further argues "[a]lthough the video begins earlier in time than the first radio transmission, the two can be correlated to determine at which time events on the video took place." Appellant's Brief at 6 n.1.

[11] Cassady does not challenge the initial traffic stop or allege that the automobile exception did not apply.[2] Rather, she argues that the dog sniff occurred after Deputy McCormick should have completed the tasks relating to the traffic stop, thus prolonging the stop. She asserts that Deputy McCormick did not have any reasonable suspicion of any ongoing criminal activity and that he should have conducted the traffic stop as expeditiously as possible. She agrees that the time involved in the dog sniff was minimal, but asserts that Deputy McCormick added to his stop of her vehicle by the additional criminal investigation of the dog sniff, and that he began preparing for the dog sniff rather than writing the ticket for the infraction.

---

[2] We note that the trial court did not base its decision on the validity of the underlying traffic stop and, as Cassady does not challenge the stop itself, we will not review that issue.

[12] The State responds that Cassady's assertion "ignores the reality that until the officer receives the report back he will often not have decided whether to issue a ticket or just a warning." Appellant's Reply Brief at 6. The State further responds that even assuming the deputy began writing out a ticket while he was waiting and that the ticket was completed and ready to hand over to Cassady as soon as the report from dispatch was received, by the time dispatch informed him that Cassady had a valid license, the continued detention was supported by probable cause of criminal wrongdoing.

[13] "In reviewing a trial court's motion to suppress, we determine whether the record discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006)). "We do not reweigh the evidence, but consider 'conflicting evidence most favorably to the trial court's ruling.'" *Id.* (quoting *Quirk*, 842 N.E.2d at 340). "When the State appeals from a negative judgment, as here, it 'must show that the trial court's ruling on the suppression motion was contrary to law.'" *Id.* (quoting *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind. 2008), *reh'g denied*). "[T]he ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

[14] To the extent the trial court based its grant of Cassady's motion to suppress merely on the idea that no reasonably articulable suspicion of criminal activity existed, we disagree. "It is well settled that a dog sniff is not a search protected by the Fourth Amendment." *State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010).

Accordingly, no degree of suspicion is required to summon the canine unit to the scene to conduct an exterior sniff of the car or to conduct the sniff itself. *Id.* We also note that the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the individual officers involved. *State v. Gray*, 997 N.E.2d 1147, 1152 (Ind. Ct. App. 2013) (citing *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769 (1996)), *trans. denied*.

[15] In *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), the United States Supreme Court addressed dog sniffs in the context of traffic stops. The Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." 135 S. Ct. at 1612. The Court held that "[a] seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834 (2005)). The Court observed that it had "so recognized in *Caballes*" and "adhere[d] to the line drawn in that decision." *Id.*

[16] The Court held that because addressing the infraction is the purpose of the stop, "it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id.* at 1614 (citing *Caballes*, 543 U.S. at 407, 125 S. Ct. 834). The Court further held that "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* The Court observed that its decisions in *Caballes* and *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781 (2009), heed these constraints. *Id.* at 1614. The Court stated:

In [*Caballes* and *Johnson*], we concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention. *Johnson*, 555 U.S., at 327-328, 129 S. Ct. 781 (questioning); *Caballes*, 543 U.S., at 406, 408, 125 S. Ct. 834 (dog sniff). In *Caballes*, however, we cautioned that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. 543 U.S., at 407, 125 S. Ct. 834. And we repeated that admonition in *Johnson*: The seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." 555 U.S., at 333, 129 S. Ct. 781. *See also Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 161 L.Ed.2d 299 (2005) (because unrelated inquiries did not "exten[d] the time [petitioner] was detained[,] . . . no additional Fourth Amendment justification . . . was required"). An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

*Id.* at 1614-1615. The Court held that beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop which typically include checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* The Court held that the critical question is whether conducting the sniff prolongs or adds time to the stop. *Id.* at 1616. This Court has previously held that the burden is on the State to show the time for the traffic stop was not increased due to a canine sniff. *Wells v. State*, 922 N.E.2d 697, 700 (Ind. Ct. App. 2010), *trans. denied*.

[17] The trial court made no finding regarding whether conducting the dog sniff prolonged the stop. Deputy McCormick testified that he called in Cassady's information, and began a search with his dog while he was waiting for dispatch to provide information back on her status. Based upon the audio recording, approximately three minutes and thirty-five seconds passed between the time Deputy McCormick gave his location of "Quincy and Randolph" and a description of the vehicle to dispatch at approximately 21.49.17, and the time that he was informed that Cassady was a valid operator at approximately 21.52.52. Similarly, based upon the video recording, approximately three minutes and thirty-five seconds passed between the time Deputy McCormick gave his location of "Quincy and Randolph" and the time when he concluded walking his dog around Cassady's vehicle.

[18] Comparing the time on the audio and video recordings, we conclude that Deputy McCormick's dog alerted for the odor of narcotics at least once prior to the time that dispatch informed Deputy McCormick that Cassady had a valid license. The dog's second alert occurred just prior to or at approximately the same time as dispatch communicated to Deputy McCormick that Cassady had a valid license. We also observe that only approximately four minutes passed between the time Cassady stopped her vehicle and the completion of the dog sniff. Under the circumstances, we conclude that Deputy McCormick's actions were conducted in a manner that did not prolong the stop beyond the time

reasonably required to complete the mission of issuing a ticket.[3]  *See Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005) (finding no error in the trial court's determination that the canine sniff test occurred while the traffic stop was ongoing, that is, while defendant was having the traffic citation explained to him); *cf. Wells*, 922 N.E.2d at 700-702 (holding that dog sniff and ensuing search were the result of an unconstitutional seizure where canine unit summoned only after officer obtained all information needed to write traffic ticket and canine unit arrived "nearly twenty minutes after [defendant's] traffic stop could have been completed and almost forty minutes after it began"); *Wilson v. State*, 847 N.E.2d 1064, 1066 (Ind. Ct. App. 2006) (holding that the trial court erred in denying the defendant's motion to suppress where warrant check was completed at 1:58 a.m., warning tickets were written at 2:06 a.m., and canine unit was summoned at 2:15 a.m., only after defendant declined consent to search car).  Consequently, we conclude that the trial court erred in granting Cassady's motion to suppress.[4]

---

[3] The State asserts that Cassady did not make any separate argument of a violation under Article 1, Section 11 of the Indiana Constitution or cite any cases applying a Section 11 analysis, nor did the trial court's order address any claim or find any violation under the Indiana Constitution.  While Cassady's motion to suppress mentioned the Indiana Constitution, she does not cite or develop an argument under the Indiana Constitution on appeal.  Nonetheless, we reach the same conclusion under the Indiana Constitution.  In analyzing a defendant's claim under Article 1, Section 11, the Indiana Supreme Court held that a dog sniff "is an unreasonable investigatory detention if the motorist is held for longer than necessary to complete the officer's work related to the traffic violation and the officer lacks reasonable suspicion that the motorist is engaged in criminal activity."  *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013).  Given that Deputy McCormick performed the dog sniff while he was waiting for a response from dispatch with respect to the license check, we cannot say that the deputy's actions were unreasonable.

[4] Cassady cites *State v. Gray*, 997 N.E.2d 1147 (Ind. Ct. App. 2013), *trans. denied*.  In *Gray*, an officer initiated a traffic stop, approached the vehicle, obtained the driver's license, registration, and proof of insurance, returned to his police vehicle, placed the driver's information on the seat, and conducted a dog sniff of the

## *Conclusion*

For the foregoing reasons, we reverse the trial court's grant of Cassady's motion to suppress and remand for proceedings consistent with this opinion.

Reversed and remanded.

Baker, J., concurs.

May, J., dissents with separate opinion.

---

stopped vehicle. 997 N.E.2d at 1149-1150. The officer did not run the standard license/warrant check or report the driver's information to dispatch prior to the dog sniff. *Id.* at 1150. The officer later testified that he "postponed the 'normal traffic stop' procedure (performing checks on driver license, license plate and outstanding warrants) in order to conduct the canine sniff." *Id.* at 1152. On appeal, this court held that the delay amounted to an increase in the duration of the seizure for purposes outside the scope of the traffic stop. *Id.* Here, unlike in *Gray*, Deputy McCormick performed the dog sniff after he requested a license check and while he was waiting for a response. Accordingly, we find *Gray* distinguishable.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Megan J. Cassady,<br>*Appellee-Defendant.* | Court of Appeals Case No.<br>17A03-1512-CR-2090<br><br>Appeal from the DeKalb Superior<br>Court<br><br>The Honorable Kevin P. Wallace,<br>Judge<br><br>Trial Court Cause No.<br>17D01-1504-F6-70 |

**May, Judge, dissenting.**

The trial court granted Cassady's motion to suppress the evidence gathered as part of a dog sniff during a traffic stop. The majority reverses because "Deputy McCormick's actions were conducted in a manner that did not prolong the stop beyond the time reasonably required to complete the mission of issuing the ticket." *Slip op*. at 13. As I would affirm the trial court's decision, I must respectfully dissent.

The majority acknowledges "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct 1609, 1612 (2015). When a seizure is justified based on the observation of a traffic violation, it "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission [of issuing a traffic citation]." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). A dog sniff "is not fairly characterized as part of the officer's traffic mission." *Rodriguez*, 135 S. Ct. at 1615. The "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are - or reasonably should have been - completed." *Id*.

In *Rodriguez*, the Government argued the stop was not unreasonably prolonged because the officer was "reasonably diligent" in completing the purpose of the stop and the "overall duration of the stop remain[ed] reasonable in relation to the duration of other traffic stops involving similar circumstances." *Id*. The Court characterized the Government's argument as allowing the officer "bonus time" should he complete "all traffic-related tasks expeditiously." *Id*. The Court rejected that argument and held, "[t]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conductingthe sniff 'prolongs' - i.e., adds time to - 'the stop[.]'" *Id*. (quoting *Caballes*, 543 U.S. at 407). The State has the burden to prove the traffic stop was not prolonged due to the dog sniff. *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001).

The State did not meet that burden here. The video reveals the officer did not have time to complete any steps related to the observed traffic violation, as he was in the car for approximately sixteen seconds before exiting the car to retrieve the drug sniffing dog. *See Rodriguez*, 135 S. Ct. at 1615 (ordinary inquiries incident to a traffic stop "involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."). Deputy McCormick called in Cassady's license after removing the dog from the car, and over a minute after receiving it from her. That prolonged the traffic stop beyond what was required to complete the mission of the stop – issuing a citation to Cassady because she didn't signal a turn.

An officer may prolong the traffic stop to complete a dog sniff if the officer has "the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id*. Deputy McCormick did not have such reasonable suspicion. In *Wilson v. State*, 847 N.E.2d 1064, 1067 (Ind. Ct. App. 2006), the officer indicated Wilson possessed $4000 in cash, was watching police activity before he was confronted, sped off at a high rate of speed, had shaking hands, and had been convicted of drug related offenses. Those facts did not give the officer reasonable suspicion to call for a dog sniff for narcotics: "A person's nervousness when stopped by the police at 2:00 a.m. is understandable, as is watching a passing patrol car. Carrying $4,000.00 in cash is unusual, but it is not illegal." *Id*. at 1068.

[26] Here, the officer testified Cassady "became defensive in her, [sic] and very guarded in her comments or answering questions that I had for her[.]" (Tr. at 11.) He also testified that while he was waiting for Cassady to produce her license and registration, he had "already made the decision that [he] was going to remove the dog, and perform a scan with the dog." (*Id*. at 13.) Cassady's actions were not enough to give the officer reasonable suspicion.

[27] I believe the trial court correctly suppressed the evidence because the officer prolonged the traffic stop to complete the dog sniff and did not have reasonable suspicion to justify prolonging the stop. I acknowledge other decisions involve stops that were prolonged more. But under *Rodriguez*, the amount of time by which the stop is prolonged is not determinative. *See Rodriguez*, 135 S. Ct. at 1616 ("The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs' - i.e., adds time to - 'the stop[.]'").

[28] As the officer prolonged the stop without reasonable suspicion, I respectfully dissent.